**SILVERMANACAMPORA LLP**
Proposed Attorneys for the Debtors
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Gerard R. Luckman
Brian Powers

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:

  SG BLOCKS, INC.,

                    Debtor.
-----------------------------------------------------------x
In re:

  SG BUILDING BLOCKS, INC.,

                    Debtor.
-----------------------------------------------------------x
In re:

  ENDAXI INFRASTRUCTURE GROUP, INC.,

                    Debtor.
-----------------------------------------------------------x

Chapter 11

Case No.: 15-12790 (JLG)

Chapter 11

Case No.: 15-12791 (JLG)

Chapter 11

Case No.: 15-12792 (JLG)

### DEBTORS' MOTION FOR AN ORDER AUTHORIZING
### <u>CONTINUATION OF CERTAIN CUSTOMER PRACTICES</u>

      SG Blocks, Inc., SG Building Blocks, Inc., and Endaxi Infrastructure Group, Inc. (collectively, the "**Debtors**"), the above-captioned debtors and debtors-in-possession, submit this motion (the "**Motion**") seeking the entry of an order pursuant to sections 105(a), 363(b) and 503(b)(1) of title 11, United States Code (the "**Bankruptcy Code**") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") authorizing the Debtors to honor certain customer deposits, returns, and related customer warranty and service requests in the ordinary course of the Debtors' business (the "**Customer Practices**"), and respectfully represent:

15-12790-jlg    Doc 7    Filed 10/15/15    Entered 10/15/15 17:55:29    Main Document
                                    Pg 2 of 8

## **BACKGROUND**

1. On October 15, 2015 (the "**Petition Date**"), the Debtors each filed chapter 11 petitions under title 11, United States Code (the "**Bankruptcy Code**") in this Court.

2. The Debtors' primary business is to work with architects, developers, builders, and commercial clients to design and build code-engineered, modified cargo shipping containers to meet the growing demand for safe and green construction. Rather than consuming new steel and lumber, the Debtors capitalize on the structural engineering and design parameters a shipping container must meet and repurposes them for use in construction of new structures. The Debtors' containers are used in residential, commercial, and military structures, including major fast food and retail chain locations.

3. The Debtors work closely with third party partner companies to source materials for each project need, and the Debtors provide their technical experience and expertise to assist their partners to meet the client's exact specifications. The Debtors do not perform the modifications or deliveries themselves, but rather all manufacturing and logistics are handled by third party partners.

4. Additional information about the Debtors' businesses and events leading up to the Petition Date can be found in the "Declaration of Paul Galvin Under Local Rules 1007-2 in Connection with Chapter 11 Filing, and Local Rule 9077-1 in Support of Certain 'First Day' Motions," dated October 15, 2015 (ECF Doc. No. 5).

5. The Debtors are authorized to remain in possession of their property and to continue in the operation and management of their businesses as a debtors-in-possession under Bankruptcy Code §§ 1107 and 1108.

6. To date, no committee, trustee, or examiner has been appointed in these cases.

## JURISDICTION AND VENUE

7.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of the United States District Court for the Southern District of New York to amend the Standing Order of Reference M-61 (Preska, C.J.).

8.  This is a core proceeding pursuant to 28 U.S.C. §157(b).

9.  Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

10. The statutory predicates for the relief requested are Bankruptcy Code §§ 105(a), 363(b), and 503(b)(1) and Bankruptcy Rules 6003, 6004(h), 7062 and 9014.

## RELIEF REQUESTED

11. Prior to the filing of the Debtors' chapter 11 cases, in the ordinary course of their businesses, the Debtors received certain deposits on orders placed by its customers (the "**Deposits**").  The Debtors' estimate that the total amount of the Deposits is approximately $13,560.00, which were down payments on orders totaling $65,050.00

12. The Deposits were used to help cover the necessary costs of modifying and transporting the Debtors' shipping containers.  Upon receipt of the final product, customers were responsible for payment of the remaining amount of the purchase price.  Further, the Debtors may have prepetition warranty claims that they may wish to address during the case in order to preserve customer relationships.

13. The Debtors' businesses, and ultimately the Debtors' ability to successfully reorganize, are dependent upon the continued satisfaction of their customers. In fact, a large percentage of the Debtors' business is based upon repeat purchases by the same customers or related entities.

14. In this regard, the Customer Practices are critical to the continued operation and success of the Debtors' businesses.  Any delay or failure in honoring the Deposits, for even a brief time, may irreparably impair customer relations and possibly cause the loss of valuable, repeat customers.  In the event that there is any lapse in honoring the Deposits, the Debtors'

businesses face irreparable harm to their value as a going concern, and ultimately their efforts to reorganize.

15. Accordingly, Debtors seek the entry of an order, pursuant to Bankruptcy Code §§ 105(a), 363(b) and 503(a)(1) and Bankruptcy Rule 6003, authorizing the Debtors to honor the Customer Practices in the ordinary course of business, thereby ensuring and maintaining customer satisfaction and loyalty without interruption of the Debtors' customary business practices throughout these chapter 11 cases.

16. Bankruptcy Code § 363(b)(1) provides that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Moreover, Bankruptcy Code § 503(b)(1) provides that a debtor may incur, and the court shall "after notice and a hearing, [allow] . . . administrative expenses . . . including--the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A).

17. The Debtors believe that, pursuant to Bankruptcy Code §§ 363(b)(1) and 503(b)(1), the Customer Practices are necessary costs of preserving their estates and, thus, permissible uses of the assets of the estate. *See In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 17 (Bankr. M.D.Fla. 2005) (quoting *In re Kmart Corporation*, 359 F.3d 866, 872 (7th Cir. 2004) ("'[S]atisfaction of a pre-petition debt in order to keep 'critical' supplies flowing is a use of property other than in the ordinary course of administering an estate in bankruptcy'" under section 363(b)(1) of the Bankruptcy Code.")). The Debtors' relationship with their customers is the Debtors' primary concern, and continuity of the Customer Practices in the ordinary course of business will afford the Debtors the opportunity to maintain these relationships despite the filing of these chapter 11 cases.

18. Furthermore, this Court can authorize the continuity of the Customer Practices in the ordinary course of business pursuant to Bankruptcy Code § 105(a) and the "doctrine of necessity." Pursuant to Bankruptcy Code §105, "[t]he court may issue any order, process, or

judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a).

19. Utilization of the Court's equitable powers under Bankruptcy Code §105(a) to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

20. "The 'doctrine of necessity' stands for the principle that a bankruptcy court may allow pre-plan payments of prepetition obligations where such payments are critical to the debtor's reorganization."[1] *In re Fin. News Network Inc.*, 134 B.R. 732, 735-736 (Bankr. S.D.N.Y. 1991); *see also Ionosphere Clubs,* 98 B.R. at 176 ("This rule recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor."); *In re UNR Industries, Inc.*, 143 B.R. 506, 519-520(Bankr. N.D.Ill.1992) ("The purpose of the Necessity Doctrine is to facilitate a debtor's effective reorganization and continued operations."); *In re Enron Corp.*, 2003 WL 1562202, *20, n.31 (Bankr. S.D.N.Y. 2003); *In re Mansfield*, 394 B.R. 783, 790, n.9 (Bankr. E.D.Pa. 2008).  Although it originated in railway cases, the "doctrine of necessity" has been extended to chapter 11 cases as well.  *See Fin. News Network Inc.*, 134 B.R. at 790 (citing *Dudley v. Mealey*, 147 F.2d 268 (2d Cir. 1945), cert. denied, 325 U.S. 873 (1945); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174 (Bankr. S.D.N.Y.1989)).

21. Although the authorization of the payment of a prepetition claim is extraordinary relief, by employing the "doctrine of necessity," bankruptcy courts have authorized the payment of critical prepetition claims, which are not otherwise authorized by the Bankruptcy Code.  *See In re Synteen Technologies, Inc.*, 2000 WL 33709667, *2 (Bankr. D.S.C. 2000)(citing *In re Boston and Maine Corp.*, 634 F.2d 1359, 1382 (1st Cir.1980) (recognizing the existence of

---

[1] The United States Supreme Court first articulated the "doctrine of necessity" in *Miltenberger v. Logansport*, C. & S.W. R.Co., 106 U.S. 286, 1 S.Ct. 140, 27 L.Ed. 117 (1882); *see also Ionosphere Clubs*, 98 B.R. at 175-176.  Here, although the Debtors are not paying a pre-petition claim, honoring or giving credit for the Deposits does reduce the Debtors' post-petition obligations.

   BPOWERS/1817335.1/065531

judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to debtor's continued operation)); *In re Eagle-Picher Ind., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("In applying the view of the law which we adopt, we consider that to justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process."); *see also In re CAF Bindery, Inc.*, 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996) (payment of prepetition claims warranted when critical to debtor's reorganization); *In re Eagle-Pitcher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process."); *In re NVR L.P.*, 174 B.R. 126, 127 (Bankr. E.D.Va. 1992) ("[T]he court can permit pre-plan payment of a pre-petition obligation where essential to the continued operation of the debtor.").

22. The rehabilitation of a chapter 11 debtor is the paramount goal of chapter 11. *See NLRB v. Bildisco and Bildisco*, 465 U.S. 513 (1984); *see also In re United American, Inc.*, 327 B.R. 776, 781 (Bankr. E.D.Va. 2005) ("The Doctrine of Necessity is an equitable doctrine that endeavors to reconcile two otherwise irreconcilable objectives of chapter 11: the reorganization of otherwise viable entities that have fallen upon hard times into profitable entities and thereby pay pre-petition creditors and preserve jobs; and, at the same time, the equal treatment of all creditors.)  It follows then, that the "doctrine of necessity" should be invoked in circumstances where payment of prepetition claim is necessary in order to ensure the successful rehabilitation of a chapter 11 debtor, and thus, avert frustrating the goals of filing a chapter 11 petition. *See In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment).

23. Here, the Debtors' need to honor the Customer Practices satisfies the relevant requirements set forth in the above cases.

24. The relief requested herein may be authorized under Bankruptcy Rule 6003, which provides that the relief requested may be granted if the "relief is necessary to avoid immediate and irreparable harm." FED. R. BANKR. P. 6003. *See In re Humboldt Creamery, LLC,* 2009 WL 2820552, *1 (Bankr. N.D. Cal. 2009) ("This rule does not permit the payment of a claim which arose prepetition for the first 20 days of a bankruptcy unless it is necessary to avoid immediate and irreparable harm . . . . The court fears that any disruption of payment to the farmers would seriously prejudice the debtor's ability to continue normal operations while in Chapter 11.").

25. Customer loyalty is vital to the Debtors' businesses and, thus, their rehabilitation in chapter 11. Consequently, in the Debtors' business judgment, the uninterrupted maintenance of the Customer Practices is essential to maintaining customer loyalty. The Debtors further believe that any disruption of the Customer Practices would threaten to deteriorate the Debtors' customer base, and the Debtors' efforts to rehabilitate would ultimately be similarly frustrated. Maintaining the Customer Practices is therefore critical to the Debtors' reorganization and is in the best interests of all creditors and parties in interest.

26. By this Motion, the Debtors are only seeking authorization to continue and honor the Customer Practices. To be clear, the Debtors are not, at this time, requesting blanket authorization to assume as executory contracts all prepetition obligations to its customers. Moreover, nothing contained herein shall be deemed or construed as an assumption of, or adoption of, any contract or agreement, or shall otherwise affect the Debtors' right to assume or reject any executory contract or unexpired non-residential lease under Bankruptcy Code § 365.

## **CONCLUSION**

27. Notice of this Motion has been provided to: (a) the Office of the United States Trustee, (b) the Debtors' twenty largest creditors, or counsel to the Official Committee of Unsecured Creditors, if one is appointed, (d) all of the Debtors' secured creditors, (e) the

Securities and Exchange Commission, and (g) all parties that have filed notices of appearances and requests for notices in the Debtors' chapter 11 cases.

28.  No prior request for the relief requested herein had been made to this or any other Court.

**WHEREFORE,** the Debtors respectfully requests that the Court enter an order substantially in the form annexed hereto as **Exhibit A**, and grant the Debtors such further relief as the Court deems proper.

Dated:  Jericho, New York  
       October 15, 2015

**S**ILVERMAN**A**CAMPORA **LLP**  
Proposed Attorneys for the Debtors

By: *s/ Gerard R. Luckman*  
    Gerard R. Luckman  
Member of the Firm  
100 Jericho Quadrangle, Suite 300  
Jericho, New York 11753  
(516) 479-6300

BPOWERS/1817335.1/065531