**SILVERMANACAMPORA LLP**
Proposed Attorneys for the Debtors
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Gerard R. Luckman
Brian Powers

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re:

SG BLOCKS, INC.,

                Debtor.

----------------------------------------------------------x
In re:

SG BUILDING BLOCKS, INC.,

                Debtor.

----------------------------------------------------------x
In re:

ENDAXI INFRASTRUCTURE GROUP, INC.,

                Debtor.

----------------------------------------------------------x

Chapter 11

Case No.:  15-12790 (JLG)

Chapter 11

Case No.:  15-12791 (JLG)

Chapter 11

Case No.:  15-12792 (JLG)

**EMERGENCY APPLICATION FOR
ORDERS (1) AUTHORIZING THE DEBTORS TO INCUR
POST PETITION FINANCING, ON AN INTERIM AND FINAL BASIS,
WITH SUPERPRIORITY OVER ADMINISTRATIVE EXPENSES AND
SECURED BY SUPERPRIORITY LIENS PURSUANT TO 11 U.S.C. §§105(a),
361, 364(c) AND 364(d), (2) AUTHORIZING THE USE OF CASH COLLATERAL
PURSUANT TO 11 U.S.C. §363(c) AND PROVIDING ADEQUATE PROTECTION
PURSUANT TO 11 USC §§361 AND 507(b), (3) SCHEDULING A FINAL HEARING
AND ESTABLISHING NOTICE REQUIREMENTS PURSUANT TO BANKRUPTCY
RULES 2002 AND 4001 AND GRANTING RELATED RELIEF**

TO:   THE HONORABLE JAMES L. GARRITY
       UNITED STATES BANKRUPTCY JUDGE:

     SG Blocks, Inc., SG Building Blocks, Inc. and Endaxi Infrastructure Group, Inc., the

above-captioned debtors and debtors-in-possession (the "**Debtors**"), submit this (the

"**Application**") seeking the entry of interim and final orders authorizing and approving the terms

and conditions under which the Debtors may use cash collateral and obtain debtor in

possession financing, and scheduling a final hearing thereon, and in support of the Application, respectfully set forth and represent as follows:

## SUMMARY OF RELIEF REQUESTED

1.      By this Application, the Debtors request entry of an order pursuant to §§105, 361, 362, 363, and 364 of title 11, United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), (i) authorizing the use of "cash collateral," as such term is defined Bankruptcy Code §363, in which Hillair Capital Investments L.P. ("**Hillair**"), Dillon Hill Capital, LLC ("**Dillon**"), Dillon Hill Investment Company, LLC ("**DHIC**"), Frank Casano ("**Casano**"), Scott Masterson ("**Masterson**") and Marc Nuccitelli ("**Nuccitelli**", and with Hillair, Dillon, DHIC, Casano, and Masterson, collectively, the "**Prepetition Lender**") has an interest (the "**Cash Collateral**"), (ii) authorizing the Debtors to obtain debtor in possession financing ("**DIP Financing**") from Hillair and any other lender that may become a party to the Debtor in possession Credit Agreement (the "**DIP Lender**") pursuant to terms set forth in the Debtor in Possession Credit Agreement ("**DIP Term Loan**") it proposes to enter into with the Debtors with any exceptions noted herein, (iii) providing adequate protection (as hereinafter defined) to the Prepetition Lender; (iv) vacating and modifying the automatic stay imposed by Bankruptcy Code §362 to the extent necessary to implement and effectuate the terms and provisions of any such Order; and (v) scheduling, pursuant to Bankruptcy Rule 4001, a final hearing (the "**Final Hearing**") to be held before this Court to consider entry of a final order approving (a) the Debtors' obtaining DIP Financing and use of Cash Collateral and (b) the grant of adequate protection to Prepetition Lender, all on a final basis (the "**Final Order**").  A proposed interim order (the "**Interim Order**") is annexed hereto as **Exhibit A**.

2.      SG Blocks is the 100% stockholder in both Building Blocks and Endaxi. The Debtors do not believe that Building Blocks or Endaxi have any assets, but are guarantors (the

GRL/1817463.4/065531

"**Guarantors**") of SG Blocks' secured debt. The DIP Term Loan also provides for SG Blocks to be the Borrower, with Building Blocks and Endaxi as guarantors.

1. Before the Filing Date, SG Blocks as Borrower, and to the extent applicable, the Guarantors, entered into that certain: (i) $162,000 Original Issue Discount Senior Secured Convertible Debenture due November 3, 2015 (the "**Bridge Debenture**"), for a subscription amount of $150,000, issued by the Borrower to Hillair, in its capacity as a pre-petition lender (the "**August 2015 Financing**"); (ii) Securities Purchase Agreement, dated August 5, 2015, between the Borrower and Hillair (the "**2015 Securities Purchase Agreement**"); (iii) Subsidiary Guarantee dated August 5, 2015, executed and delivered by the Guarantors in favor of Hillair (the "**2015 Subsidiary Guarantee**"); (iv) Security Agreement dated August 5, 2015, executed and delivered by the Borrower and the Guarantors in favor of Hillair to secure the Borrower's obligations under the Bridge Indenture (the "**2015 Security Agreement**"); (v) Securities Exchange Agreement dated April 10, 2014 (the "**Exchange Agreement**") with Hillair, Casano and Masterson who held certain existing Senior Convertible Debentures (the "**Existing Debentures**") pursuant to which the Existing Debentures with a stated maturity value of $1,680,000 were surrendered in exchange for new Senior Convertible Debentures with a stated interest rate of eight percent (8%) per year, a stated maturity value of $1,915,200, a conversion price of $0.25 per share, subject to adjustment, with a final maturity date of April 1, 2016 (the "**2014 Exchange Debentures**"); (vi) Securities Purchase Agreement, dated April 10, 2014, between the Borrower, Hillair, DHC, DHIC, Nuccitelli, Casano and Masterson (the "**2014 Securities Purchase Agreement**"); (vii) 8% Original Discount Senior Secured Convertible Debenture(s) Due April 1, 2016 dated April 10, 2014, issued by the Borrower to Hillair, DHC, DHIC, Nuccitelli, Casano and Masterson with an aggregate of $2,080,500 in principal amount and for a subscription amount of $1,825,000 (the "**2014 New Debentures**"); (viii) Subsidiary Guarantee dated April 10, 2014, executed and delivered by SG Building in favor of Hillair, DHC, DHIC, Nuccitelli, Casano and Masterson (the "**2014 Subsidiary Guarantee**"); (ix) Security

3

Agreement dated April 10, 2014, executed and delivered by the Borrower and SG Building in favor of Hillair, DHC, DHIC, Nuccitelli, Casano and Masterson to secure the Borrower's obligations under the 2014 New Debentures (the "**2014 Security Agreement**"); and (x) all other documents, instruments, related writings, financing statements, security documents, warrants executed in connection therewith between the Debtors and/or any of the parties to the foregoing agreements (collectively, with the Bridge Debenture, the August 2015 Financing, the 2015 Securities Purchase Agreement, the 2015 Subsidiary Guarantee, the 2015 Security Agreement, the 2014 Exchange Debentures, the 2014 Securities Purchase Agreement, the 2014 New Debentures, the 2014 Subsidiary Guarantee, and the 2014 Security Agreement, the "**Prepetition Loan Documents**").

2.      As of October 15, 2015, the Debtors were indebted to the Prepetition Lender under the Prepetition Loan Documents in an amount not less than: (i) $210,600 to Hillair on the Bridge Debenture; (ii) $2,489,760 on the 2014 Exchange Debentures; and (iii) $2,704,650 on the 2014 New Debentures, constituting principal obligations incurred directly by the Borrower, plus any unpaid interest, fees, costs and expenses (the "**Prepetition Obligations**").

3.      In accordance with Bankruptcy Rule 4001, below is a summary of the terms of the proposed DIP Financing and use of Cash Collateral:

A.      Cash Collateral and DIP Financing

(i)      Parties with an Interest in the Cash Collateral.  The party with an interest in the Cash Collateral is the Prepetition Lender.

(ii)      DIP Financing and Use of Cash Collateral.  The Debtors shall obtain DIP Financing and use Cash Collateral to fund the operation of their business and in accordance with the DIP budget (the "**Approved Budget**") setting forth on a line-item basis the Debtors' anticipated cumulative cash receipts and expenditures on a weekly basis and all necessary and required cumulative expenses which the Debtors expect to incur during each week of the Initial Approved Budget.  A copy of the Approved Budget is annexed hereto as **Exhibit B**.

(iii)      Events of Default.  Nonpayment, inaccuracy of representations and warranties; violation of covenants; cross-default; certain

4

ERISA events; noncompliance with term relating to the DIP Budget; or if:

(a)    the Debtors' cases are either dismissed or converted to a case under chapter 7 of the Bankruptcy Code;

(b)    a trustee or an examiner with expanded powers is appointed in the chapter 11 cases;

(c)    any plan(s) of reorganization of the Debtors are filed which does not provide for the payment in full in cash of the post-petition DIP Term Loan obligations upon the effective date of the plan(s);

(d)    the Debtors cease operation of their businesses or take any material action for the purpose of effecting such cessation without the prior written consent of the DIP Lender;

(e)    the Interim Order is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall materially adversely affect the rights of the DIP Lender or materially and adversely affects the priority of any or all of the DIP Lender's claims, liens or security interests and which is not acceptable to the DIP Lender, in its discretion;

(f)    the DIP Order is not entered on or before thirty (30) days after the Petition Date;

(g)    the Debtors fail to comply with or perform, in any material respect, the terms and provisions of the Interim Order or any DIP loan document, including, without limitation, using the DIP Term Loan or cash collateral other than in accordance with the provisions of the Interim Order and the Final DIP Order;

(h)    any sale or other disposition of Collateral or cash collateral is approved without the consent of the DIP Lender;

(i)    any superpriority claim or lien equal or superior in priority to that granted to the DIP Lender or the Collateral Agent is granted;

(j)    the automatic stay of Bankruptcy Code § 362 is lifted so as to allow a party other than the DIP Lender to proceed against any material asset of any Debtor;

(k)    the Debtors file, or the Court enters an order confirming, a plan of reorganization, which plan is not in form and substance acceptable to the DIP Lender; or

(l)    the 363 Sale milestones are not met within the period specified therefor, as the same may be extended in the sole discretion of the DIP Lender.

(iv)    <u>Collateral</u>:    Pursuant to Bankruptcy Code §§ 363, 364(c) and 364(d)(1), as security for the DIP Obligations, the Debtors shall grant to the DIP Lender and Hillair Capital Management LLC, in its capacity as collateral agent for the benefit of the DIP Lender (the "**Collateral Agent**"), a valid, binding, and enforceable lien, mortgage, and/or security interest (the "**DIP Facility Lien**") in all of

5

the Debtors' presently owned or hereafter acquired property and assets, whether such property and assets were acquired before or after the Petition Date, of any kind or nature, whether real or personal, tangible, or intangible, wherever located, and the proceeds and products thereof (collectively, the "**DIP Collateral**"). Notwithstanding the foregoing, the DIP Collateral shall not include the Avoidance Actions.

Pursuant to Bankruptcy Code § 364(c)(2), the DIP Lender and the Collateral Agent will be granted and shall have a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon any and all DIP Collateral that is not subject to valid, perfected, non-avoidable and enforceable liens in existence as of the Petition Date or valid liens in existence as of the Petition Date that are perfected subsequent to such date to the extent permitted by Bankruptcy Code § 546(b)

Pursuant to Bankruptcy Code § 364(d)(1), the DIP Lender and the Collateral Agent will be granted and shall have a valid, binding, continuing, enforceable, fully-perfected first priority, priming senior security interest in and lien upon all DIP Collateral that is subject to pre-petition liens securing the pre-petition obligations and all other security interests and liens on the DIP Collateral (other than the liens of the DIP Lender), except with respect to any valid, perfected and unavoidable interests in such property arising out of liens to which the holders of pre-petition liens become subject subsequent to the Petition Date as permitted by Bankruptcy Code § 546(b).

The DIP Facility Lien shall be senior to and shall not be subject or subordinate to (a) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under Bankruptcy Code § 551 or (b) subject to applicable law, any liens arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors other than as expressly permitted under the DIP Facility. The DIP Liens are subject only to the Carve-Out (defined below).

Pursuant to Bankruptcy Code §§ 363 and 364(c), the DIP Obligations shall be allowed administrative expenses of the Debtors' estates having priority in payment over any other indebtedness and/or obligations now in existence or incurred hereafter by the Debtors and over all administrative expenses or charges against property arising in the Debtors' chapter 11 cases and any superseding chapter 7 case, including without limitation those specified in Bankruptcy Code §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 1113, or 1114, subject only to the Carve-Out. The time of payment of the DIP Obligations shall

6

not be altered, extended or impaired by any plan or plans of reorganization that may hereafter be accepted or confirmed.

DIP Lender's DIP Liens and claims under the Facility shall be subject to the Carve-Out for (a) the allowed fees and expenses of the Debtors' and the Official Committee of Unsecured Creditors' retained professionals in the Debtors' bankruptcy cases in an amount acceptable to DIP Lender, and (b) the fees required to be paid to the Clerk of Court and U.S. Trustee pursuant to 28 U.S.C. § 1930, provided that, in no event shall the total carve-out to Debtors' counsel exceed $75,000.00.

(v)     Adequate Protection:  As adequate protection for the Debtors' use of the Prepetition Lender's Cash Collateral, the Prepetition Lender shall be granted, to the extent of the Debtors' diminution of the Cash Collateral, a first priority, and enforceable replacement lien (the "**Replacement Lien**") in all of the Debtors' presently owned or hereafter acquired property and assets, whether such property and assets were acquired before or after the Petition Date, of any kind or nature, whether real or personal, tangible, or intangible, wherever located, and the proceeds and products thereof (excluding causes of action brought pursuant to Bankruptcy Code §§ 544, 545, 547, 550, and 553 and the proceeds and products thereof (the "**Avoidance Actions**")).  Such lien shall be immediately junior and subordinate to the liens and security interests granted to the DIP Lender in the DIP Collateral arising from the obligations of the Debtors under the DIP Facility and the Carve-Out (defined below).

The claims of the Prepetition Lender for any diminution in the value of its interests in the Debtors assets (the "**Prepetition Collateral**") from the Petition Date resulting from (a) the use, sale, lease, disposition, shrinkage, decline in market value, consumption or physical deterioration of the Prepetition Collateral by the Debtors, and (b) the imposition of the automatic stay pursuant to § 362 of the Bankruptcy Code shall constitute allowed claims against the Debtors with priority over all administrative expenses (other than any fees arising under 28 U.S.C. § 1930), diminution claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in §§ 503(b) and 507(b) of the Bankruptcy Code, and over all administrative expenses or other claims arising under §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (collectively, the "**Prepetition Lender Superpriority Claim**"), whether or not such expenses or claims may become secured by judgment lien or other non-consensual lien, levy, or attachment or otherwise, which allowed Prepetition Lender Superpriority Claim shall be payable from and have recourse to all prepetition and post-petition property of the Debtors and all proceeds thereof; provided, however, that the Prepetition Lender Superpriority Claim granted to

7

Prepetition Lender shall be junior and subordinate to the Carve-Out and the DIP Lender's superpriority claim.

The Pre-Petition Lenders may reserve their rights to seek additional adequate protection; provided that any adequate protection provided shall be junior and subordinate to the DIP Liens, the Carve-Out and DIP Lender Superpriority Claims.

(vi)     <u>Carve-Out</u>.   The pre-petition liens, Replacement Liens, the DIP Lender Superpriority Claims and the DIP Liens shall be subject to the following, with any amounts so paid or otherwise funded by Hillair being advances secured by the DIP Facility Lien: (i) Quarterly fees of the United States Trustee and other fees due the United States Bankruptcy Court pursuant to 28 U.S.C. 1930; (ii) allowed professional fees and expenses of the Debtors' bankruptcy counsel retained pursuant to final Bankruptcy Court Order (a) to the extent incurred prior to the delivery of a Default Notice or the occurrence of the Maturity Date, whichever is earlier and (b) to the extent such fees and expenses are consistent with the budget as it relates to professional fees and expenses subject to the limitations on the use of such funds set forth in this Order, and up to an additional $25,000 but not to exceed $75,000 in the aggregate; and  (iii) any costs and fees of a chapter 7 Trustee, should one be appointed, however, not to exceed the amount of $10,000 (the "**Carve-Out**").  Any amount of the Carve Out paid or otherwise funded by DIP Lender shall be treated as advances under the DIP Financing.

(vii)    <u>Maturity Date</u>.   The Maturity Date of the DIP Financing is six months after the Petition Date.

(viii)   <u>Determination of the Validity, Enforceability, Priority, and Amount of the Prepetition Obligations</u>.  The Committee shall have sixty (60) days from its appointment of counsel, or, if no Committee is formed or the Committee fails to appoint counsel, any party-in-interest, may commence a challenge proceeding provided such action is commenced within sixty (60) days from the entry of a Final Order (or a longer period for cause shown before the expiration of such period) (the "**Challenge Period**"). In the event that no contested matter or adversary proceeding is commenced during the Challenge Period (the "**Challenge Period Termination Date**"), then, upon the Challenge Period Termination Date, any and all such challenges and objections by any party (including, without limitation, any chapter 11 or chapter 7 trustee appointed in the Debtors' bankruptcy cases or in any successor case) shall be deemed to be forever waived, barred and discharged and the Debtors' stipulations contained in this Interim Order and the Final Order shall be binding on all persons, entities, creditors, interest holders and parties in interest in the Debtors' bankruptcy cases or any successor case, and upon the Challenge Termination Period the Prepetition Obligations and liens on the Prepetition Collateral

8

shall be deemed to be fully and finally allowed under the Bankruptcy Code for all purposes in connection with these chapter 11 cases and any successor case. Only those parties in interest that have properly and with requisite standing initiated an adversary proceeding or contested matter prior to the Challenge Period Termination Date shall be permitted to prosecute such adversary proceeding or contested matter, except that any Committee shall be deemed to have proper standing for this purpose. If any such challenge is timely commenced within the Challenge Period, the agreements, stipulations and findings contained in this Interim Order shall nonetheless remain binding and preclusive on the Debtors and their estates and their creditors, the Committee, if any, equity holders, and all other parties in interest in the Debtors' bankruptcy cases, except to the extent that such findings or admissions are expressly and successfully challenged and the Court enters a final order with respect thereto.

B.      Extraordinary Provisions

(i)     The following are terms of the proposed DIP Financing and use of Cash Collateral that are considered to be "Extraordinary Provisions" under Local Rule 4001-2.

(a)     Termination Date.  In the absence of a further order of this Court, the Debtors shall no longer be authorized to use Cash Collateral or obtain advancing under the DIP Financing without the written consent of the Prepetition Lender after the earliest to occur of (i) the confirmation of a plan of reorganization for the Debtors; (ii) the sale of substantially all of the assets of the Debtors; (iii) the conversion of the Debtors' Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code; (iv) the appointment of a trustee under Chapter 11 of the Bankruptcy Code; (v) the appointment of an examiner with expanded powers under the Bankruptcy Code; (vi) the Debtors' ceasing and discontinuing their ordinary business operations; (vii) that date which is six months after the Petition Date (unless otherwise extended by the Prepetition Lender); or (viii) upon the date that Hillair delivers a notice to the Debtors of an Event of Default.

(b)     Waivers and concessions as to the validity of prepetition debt.  The Debtors have agreed not to contest the validity or amount of the debt owed to the Prepetition Lender or the validity and priority of the liens securing the Prepetition Lender's claim.  The Official Committee of Unsecured Creditors, if one is appointed (the "**Committee**"), and all non-Debtor parties in interest (including any trustee appointed or elected in the case prior to the Challenge Deadline) shall have time in accordance with Local Rule

9

4001-2(f) to investigate the validity, perfection, and enforceability of the Prepetition Obligations and the Prepetition Lender's liens, or to assert any other claims or causes of action against the Prepetition Lender. The Committee shall have sixty (60) days from its appointment of counsel, or, if no Committee is formed or the Committee fails to appoint counsel, any party-in-interest, may commence a challenge proceeding provided such action is commenced within sixty (60) days from the entry of a Final Order (or a longer period for cause shown before the expiration of such period). The Debtors believe that this is appropriate because it gives sixty (60) days after the appointment of a Committee and its counsel, which could be much longer than the initial period provided for under the Local Rule. To give all interested parties comfort, to move forward with interim financing, and to move towards the entry of a Final Order this issue must be addressed.

(c)    <u>Continued Credit Arrangement</u>. Under the DIP Term Loan, DIP Lender shall continue to make post-petition loans to the Debtors, at the Debtors' request, which in the aggregate shall not exceed $600,000.

## **<u>BACKGROUND</u>**

3.      On October 15, 2015 (the "**Petition Date**"), the Debtors filed voluntary chapter 11 petitions in this Court.

4.      The Debtors' primary business is to work with architects, developers, builders, and commercial clients to design and build code-engineered, modified cargo shipping containers to meet the growing demand for safe and green construction. Rather than consuming new steel and lumber, the Debtors capitalize on the structural engineering and design parameters a shipping container must meet and repurposes them for use in construction of new structures. The Debtors' containers are used in residential, commercial, and military structures, including major fast food and retail chain locations.

5.      The Debtors work closely with third party partner companies to source materials for each project need, and the Debtors provide their technical experience and expertise to assist their partners to meet the client's exact specifications. The Debtors do not perform the modifications or deliveries themselves, but rather all manufacturing and logistics are handled by

GRL/1817463.4/065531

third party partners.

4.      Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the "Declaration of Paul Galvin Under Local Rule 1007-2 in Connection with Chapter 11 Filings and in Support of Certain 'First Day' Motions," dated October 15, 2015 (ECF Doc. No. 5).

5.      The Debtors have provided the Prepetition Lender with a ninety-day financial forecast and, based upon that forecast, the Prepetition Lender has agreed to the Debtors' use of cash collateral and Hillair has agreed to provide post-petition financing to the Debtors upon terms set forth in the DIP Term Loan and as provided herein.

6.      The Debtors have sought protection under chapter 11 to remedy their illiquidity immediately through emergency debtor-in-possession financing provided pursuant to Bankruptcy Code §364, in order to enable them to preserve the value of their assets as a going concern.  The Debtors expect to move quickly to put forth a plan of reorganization.  In the interim, the Debtors' operations require sufficient levels of working capital to fund and support ordinary business expenditures, including payroll, expenses for building and shipment of orders, taxes and other necessary overhead costs.

7.      Absent access to emergency financing, the Debtors will not have sufficient liquidity to continue production and order fulfillment, resulting in immediate and irreparable harm to the Debtors' creditors, their estates, and employees.  Implementation of the post-petition financing arrangements summarized herein at the onset of these cases is critical to avoid immediate and irreparable harm to the estates, and to support Debtors' effort to maximize the estates for the benefit of all creditors and parties-in-interest.

8.      At this time, Hillair has indicated a willingness to advance funding required to meet the cash requirements of the Debtors' restructuring process and provide the Debtors with a period of time with which to either market their business for sale or equity investment, or propose a plan to restructure the Debtors' businesses.

11

9.     The Debtors believe that if they are permitted to restructure their operations and finances, the reorganized entities will be able to exit bankruptcy healthier and stronger companies that can compete in this industry.

10.     At this time, given the magnitude of their obligations and various immediate pressures on maintaining adequate cash flow to operate and restructure, the Debtors are compelled to pursue their financial and operational restructuring within the protections offered by chapter 11 of the Bankruptcy Code.

11.     Accordingly, by this Application, Debtors seek entry of the Interim Order and the Final Order (collectively, the "**Borrowing Orders**");

  a)     pursuant to Bankruptcy Code §§364(c)(1), (2), (3) and (d) and §§503(b) and 507 and Bankruptcy Rule 4001(c), authorizing the Debtors to obtain post-petition financing in the form of a $600,000 Maximum Credit Facility pursuant to the terms of the DIP Facility, among the Debtors and Hillair, and granting to Hillair superpriority administrative expense claim status pursuant to Bankruptcy Code §§364(d)(1), 503(b) and 507 and a superpriority lien on and security interest in substantially all of the assets of the Debtors, all in accordance with the terms and conditions of the DIP Facility;

  b)     approving the terms and conditions of the DIP Facility and authorizing the Debtors to execute and deliver, from time to time, all such documents, instruments and agreements and perform such other acts as may be required, necessary or desirable in connection with the DIP Facility including, without limitation, the payment of all fees, interest and charges required under the DIP Facility;

  c)     granting authorization of borrowing under the DIP Facility of $600,000;

  d)     authorizing use of cash collateral of Prepetition Lender under Bankruptcy Code §361(2) and granting Prepetition Lender adequate protection for the use of cash collateral, through replacement liens on post-petition assets and a superpriority administrative expense claim under Bankruptcy Code §507(b) subordinate only to Hillair's Bankruptcy Code §364(c)(1) claims;

  e)     modifying the automatic stay provisions of Bankruptcy Code §362 to the extent necessary to permit the DIP Lender and the Collateral Agent to implement the terms and provisions of the DIP Facility and the provisions of the Borrowing Orders;

  f)     scheduling and approving the form and manner of notice of the Final

12

Hearing to consider entry of the Final Order granting the relief sought herein on a permanent basis; and

g)      granting the Debtors such further relief as is just and proper.

12.     The Terms of the DIP Facility are set forth herein.  The Debtors request that the Court enter the Interim Order and schedule a hearing on entry of the Final Order for early November 2015.

13.     The Debtors are authorized to remain in possession of their property and to continue in the operation and management of their businesses as debtors-in-possession under Bankruptcy Code §§ 1107 and 1108.

14.     To date, no committee, trustee, or examiner has been appointed in these chapter 11 cases.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the "Amended Standing Order of Reference" of the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.).

16.     This is a core proceeding pursuant to 28 U.S.C. §157(b).

17.     Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

18.     The statutory predicates for the relief requested herein are Bankruptcy Code §§105, 361, 362, 363, 364, and 507 Bankruptcy Rules 2002, 4001, and 9014, and Local Rule 4001-2.

## PROPOSED DEBTOR-IN-POSSESSION FINANCING

19.     The Debtors' reorganization efforts hinge on access to adequate post-petition financing to maintain its ability to purchase materials to fill orders and sustain operations so that the Debtors can remain going concerns.  While the Debtors also seek the use of Prepetition Lender's cash collateral, the Debtors are concerned that, without DIP financing available, there will be temporary periodic cash shortfalls during the chapter 11 case.  It is axiomatic that a

13

business, such as the Debtors', requires sufficient liquidity to satisfy its ongoing cash requirements, to purchase inventory for new sales, pay employees, and to fund myriad other ordinary course day-to-day expenditures. During the initial weeks of this case, the Debtors' current assets (cash, inventory, accounts receivable) will not be sufficiently liquid to satisfy such obligations in the ordinary course of business, absent access to post-petition financing.

20.     In addition, the Debtors' suppliers, vendors and other creditors are looking to the immediate approval of the DIP Facility for assurance that they will be paid on a continuous and timely basis. The Debtors' employees see the DIP Facility as necessary to ensure timely payment of payroll and other employee-related obligations. The ongoing cooperation of suppliers, vendors and employees is critical if the Debtors are to continue to operate in an orderly and reasonable manner which seeks to preserve and enhance the value of their assets for the benefit of all parties-in-interest.

21.     Without immediate access to credit pursuant to the proposed DIP Facility and to the cash collateral, there would be a precipitous termination of the Debtors' business that would destroy the going-concern value of the Debtors' assets, resulting in immediate and irreparable harm to the Debtors' estates. Quite simply, the importance of the Debtors' immediate need for post-petition financing and use of cash collateral cannot be overstated.

22.     The Debtors have determined, in the exercise of their considered business judgment in consultation with their retained professionals, that they require immediate use of borrowing under the DIP Facility up to $304,771.37 on an interim basis, with the amounts varying depending on receivables collected, and final authorization of the full DIP Facility thereafter. Such authorization will enable the Debtors to meet their immediate credit obligations and provide them with sufficient liquidity to continue operations until they can negotiate and confirm a plan of reorganization.

**Overview of Proposed DIP Facility**

23.     Due to the exigencies and the nature of Debtors' businesses, the Debtors

14

determined that it was in their best interest to obtain post-petition financing from Hillair, which was one of the Debtors' secured lenders pre-petition. Based on a review of comparable recent debtor-in-possession financing arrangements, the Debtors believe that the terms and conditions of the DIP Facility are reasonable under the circumstances. While there will be some expenses associated with this financing with Hillair, the Debtors believe that such costs will be far less than a new lender would require. Further, Hillair was one of the Debtors' prepetition lenders, and the Debtors expect that Hillair will also be one of the lenders to the reorganized debtors under a confirmed plan of reorganization. The Debtors further believe that the DIP Facility offered by Hillair is the best deal presently available to them. First, the Debtors will only be required to pay some, but not all, of the usual due diligence, origination, and commitment fees associated with such financing. Second, the Debtors can avoid costly and protracted litigation over priming the Prepetition Lender that would likely occur if they used another lender. Indeed, the Debtors project that the DIP Facility will improve their liquidity and help stabilize their operations until the reorganization process can be completed, a result which the Debtors believe would not be possible except through the DIP Facility. The Debtors are certain that they would not be able to obtain unsecured credit allowable under Bankruptcy Code §503(b)(1) as an administrative expense, or secured solely by liens and security interests junior to those of Pre-Petition Lender on better terms than that which is proposed herein.

24.    Hillair has agreed to provide Debtors with an immediate use of up to $304,771.37 of the DIP Facility, pending a final hearing. As could be expected in the Debtors' financial posture, Hillair requires that the DIP Facility be (a) entitled to superpriority administrative expense status pursuant to Bankruptcy Code § 364(c) and otherwise over all administrative expenses of the kinds specified in Bankruptcy Code §§ 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726 and 1114 and (b) secured by superpriority status pursuant to Bankruptcy Code § 364(d)(1) over senior liens on and security interests in substantially all of the Debtors' assets subject only to the Carve Out. Hillair has agreed, however, to allow the Debtors

15

a Carve Out described in detail above toward the payment of professional fees incurred by the estate.

25.     A brief summary of certain of the key provisions of the DIP Facility follows; the Court and parties-in-interest, however, are respectfully referred to the proposed DIP Order for a full recitation of the terms and conditions of the DIP Facility.

| | |
|---|---|
| Borrower: | SG Blocks, Inc., SG Building Blocks, Inc. and Endaxi Infrastructure Group, Inc. |
| Lender: | Hillair |
| Commitment: | Maximum Credit Facility up to $600,000 for the following limited uses as set forth in the budget in connection with the purchase of goods and the fulfillment of orders to its customers: (i) payroll and related costs; (ii) payment of expenses in connection with the processing of orders and shipment of orders; (iii) payment of post-petition utilities; (iv) payment of chapter 11 reorganization expenses as provided in the Approved Budget; and (v) necessary office expenses and other expenses of administering this case, all in accordance with an approved budget. |
| Priority and Liens: | All borrowings under the DIP Facility shall be: (i) entitled to superpriority administrative expense claim status pursuant to Bankruptcy Code §§364(c)(1), (2) and (3), superior to any and all administrative expense of the Debtors, except for the Carve Out; and (ii) secured pursuant to Bankruptcy Code §346(d)(1) by superpriority lien over senior security interests in and liens upon all now owned or hereafter acquired assets and property of the estates, real and personal, of the Debtors, as set forth more fully in the Borrowing Orders (the "**DIP Collateral**"). |
| Term: | Provided that no other event of default has occurred, the terms of the DIP Facility shall end on the date that is the earliest to occur of (i) the confirmation of a plan of reorganization for the Debtors; (ii) the sale of substantially all of the assets of the Debtors; (iii) the conversion of the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code; (iv) the appointment of a trustee under chapter 11 of the Bankruptcy Code; (v) the appointment of an examiner with expanded powers under the Bankruptcy Code; (vi) the Debtors' ceasing and discontinuing its ordinary business operations; or (vii) six (6) months after the Petition Date. |
| Conditions Precedent: | The availability of the DIP Facility is conditioned upon satisfaction of usual and customary conditions precedent including, among other things entry of the Interim Order and the Final Order, each in form and substance satisfactory to Hillair in its sole discretion, which Borrowing Orders shall contain provisions granting Hillair a |

16

GRL/1817463.4/065531

superpriority lien pursuant to Bankruptcy Code §§364(c)(1), (2) and (3), 503(b), 507 and 364(d)(1) on the DIP Collateral and provide that its claim has the priority set forth under Bankruptcy Code §§364(c)(1), (2) and (3), 503(b) and 507(b) over all administrative expenses incurred in these chapter 11 cases, subject to the Carve Out.

| | |
|---|---|
| **Terms of the DIP Facility:** | |
| | (i) Credit Facility: $600,000. |
| | (ii) Interest Rate: 12%. |
| | (iii) Default Rate:  17%. |
| | (iv)  Closing Fee:  $25,000. |
| | (v)  Debtors to pay Hillair's reasonable attorneys fees in connection with the DIP Facility. |
| **Modification of Automatic Stay and Notice Periods:** | Upon an uncured event of default, after giving five (5) days' prior written notice of a termination event to the Debtors, the Office of the United States Trustee, and the Official Committee of Unsecured Creditors (collectively, the "**Notice Parties**"), the Prepetition Lender, the DIP Lender and/or the Collateral Agent may move on an expedited basis on seven (7) days notice to the Notice Parties for Bankruptcy Court authority to exercise its rights and remedies pursuant to the DIP Loan Documents, the pre-petition loan documents and/or applicable law, including, without limitation, to foreclose on all or any portion of the Collateral, collect accounts receivable and other monies owing to the Debtors and apply the proceeds thereof in satisfaction of the Post-Petition Obligations and the Pre-Petition Obligations. |
| **Adequate Protection:** | Prepetition Lender will be granted replacement liens to the extent of any diminution arising out of the use of cash collateral to the fullest extent available under §§ 361 and 364(c) of the Bankruptcy Code and superpriority administrative claims under § 507(b) of the Bankruptcy Code but subordinate, in all such cases, to the liens and claims provided to the DIP Lender and subject to the Carve-Out. |

26. The Debtors believe that the terms of the DIP Facility are reasonable and fair under the circumstances and, therefore, obtaining the DIP Facility serves the best interests of the Debtors, their creditors and their estates.

GRL/1817463.4/065531

### BASIS FOR APPROVAL OF THE DIP FACILITY
### AND THE GRANTING OF LIENS AND SUPERPRIORITY
### <u>ADMINISTRATIVE CLAIMS IN CONNECTION THEREWITH</u>

27.     Bankruptcy Code § 364 authorizes this Court to allow the Debtors to obtain post-petition financing from Hillair in the manner proposed by Hillair in the DIP Facility.  As described above, as security for all borrowings under the DIP Facility, the Debtors propose to grant Hillair a superpriority administrative claim and a superpriority lien on and security interest in all or substantially all of the Debtors' assets, subject only to the Carve Out.  Such relief is authorized pursuant to Bankruptcy Code §§ 364(c)(1)(2) and (3), 364(d)(1), 503(b) and 507.

28.     The granting of a superpriority administrative claim to Hillair is allowable under Bankruptcy Code §364(c) which provides:

> If the trustee is unable to obtain unsecured credit allowable under § 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring debt –
>
> > (1)  with priority over any and all administrative expenses of the kind specified in §§ 503(b) and 507(b) of this title;
> > (2)  secured by a lien on property of the estate that is not otherwise subject to a lien; or
> > (3)  secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

29.     Similarly, the granting of superpriority administrative claim to Prepetition Lender is authorized by 507(b) which provides:

> If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(2) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

11 U.S.C. § 507(b).

30.     The grant of replacement liens to the Prepetition Lender for the diminution of its

18

collateral is governed by §361, which provides:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
>
> . . .
>
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property . . . .

11 U.S.C. § 361.

31.     The granting of superpriority lien status to Hillair is governed by Bankruptcy Code § 364(d)(1) which provides:

> (d)(1)   The Court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien if –
>
> (A) the trustee is unable to obtain such credit otherwise; and
>
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted

11 U.S.C. § 364(d)(1).

32.     Since the term "adequate protection" is not defined in the Bankruptcy Code, courts have held that the precise contours of the concept must be determined on a case-by-case basis. *See, e.g., In re O'Connor,* 808 F.2d 1393, 1396 (10th Cir. 1987).   The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in collateral during the reorganization process.   *See, e.g., In re Beker Indus. Corp.,* 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

## REQUEST FOR IMMEDIATE BORROWINGS AND USE OF CASH COLLATERAL ARE NECESSARY TO AVOID IRREPARABLE HARM

33.     Pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2), a minimum of 15 days' notice is required before a final hearing on this Application may commence.   Bankruptcy Rules 4001(b)(2) and (c)(2) also provide, however, that the Court may conduct a hearing before such 15 day period expires, and may authorize the obtaining of credit and the use of only that amount

19

of cash collateral necessary to avoid immediate and irreparable harm to the estate pending a final hearing. FED. R. BANKR. P. 4001(c)(2).

34.     As stated above, it is essential to the continued operation of their business that the Debtors be authorized by this Court to obtain interim financing and use of cash collateral on an interim basis as set forth herein pending the final hearing on the Application.  The Debtors had virtually no cash on the Petition Date.  Funds are urgently needed to meet all of the Debtors' working capital needs, and to preserve the going concern value of the Debtors.  In the absence of immediate post-petition financing and the use of cash collateral, the Debtors' attempts to maximize their value for creditors would be immediately and irreparably jeopardized.

35.     The Debtors believe that the terms and conditions of the DIP Facility represent the most favorable option for post-petition financing and for all of the foregoing reasons, are in the best interest of the Debtors, their estates and its creditors. Accordingly, the Debtors respectfully request that, pending a final hearing on the Application, the terms and provisions of the DIP Facility be implemented and approved on an emergency interim basis, to the extent of authorizing the Debtors to obtain interim post-petition financing under the DIP Facility in an aggregate amount not to exceed $304,771.37, on the terms and subject to the conditions set forth in the DIP Facility.

36.     The Debtors further submit that the terms and conditions of the DIP Facility are fair and reasonable and are the result of arms' length negotiations between Debtors and Hillair. Hillair has waived or reduced many of the customary fees and expenses that one would otherwise expect to be elements of a DIP transaction.  Accordingly, Hillair should be accorded the benefits of Bankruptcy Code § 364(e) in respect of the DIP Facility.

37.     As is apparent from the foregoing, the interim relief requested in this Application, pending the Final Hearing, is necessary, appropriate and fully warranted, and is essential to avoid immediate and irreparable harm to the Debtors, their estates and their creditors.

GRL/1817463.4/065531

**NOTICE WITH RESPECT TO THE INTERIM ORDER**

38.     The Debtors will provide notice by electronic transmission, facsimile or overnight mail of this Application pursuant to Bankruptcy Rule 4001 to (a) the Office of the United States Trustee for Region 2, (b) attorneys for Hillair, (c) the Debtors' twenty largest creditors, or counsel to the Committee, if one is appointed, (d) the Debtors' remaining secured creditors, (e) Securities and Exchange Commission, and by first class mail, (f) all parties who have requested notice in this case. The Debtors respectfully submit that such notice is sufficient and requests that this Court find that no further notice of the relief requested herein is required.

**NOTICE WITH RESPECT TO THE FINAL ORDER**

39.     The Debtors also propose to serve a copy of the Interim Order, this Application (together with exhibits) and Notice of the Final Hearing on entry of the Final Order by electronic transmission, facsimile or overnight mail, within two (2) days after entry of the Interim Order, upon (a) the Office of the United States Trustee, (b) attorneys for Hillair, (c) the Debtors' twenty largest creditors, or counsel to the Committee, if one is appointed, (d) the Debtors' remaining secured creditors, (e) the Securities and Exchange Commission, and, by first class mail, on (f) the District Director for the Internal Revenue Service, and (g) all parties that have filed notices of appearances and requests for notices in the Debtors' chapter 11 cases.

40.     The Debtors will serve Notice of the Final Order by first class mail on all of the Debtors' creditors.

41.     The Debtors respectfully submit that such notice is sufficient, and requests that this Court find that no further notice of the Interim Order, the Final Hearing, the Final Order and all proceedings to be held in connection therewith is required.

42.     No previous application for the relief sought herein has been made to this or any other Court.

**WHEREFORE,** the Debtors respectfully request that the Court: (a) enter the Interim Order (1) authorizing the Debtors to use cash collateral on an interim basis and to obtain

21

financing pursuant to the DIP Facility on an interim basis through the conclusion of the Final

Hearing on the terms set forth herein and the DIP Facility, and (2) setting a date for the Final

Hearing; (b) enter the Final Order authorizing the Debtors to use cash collateral and to obtain

financing under the DIP Facility on the terms set forth herein and in the DIP Facility; and (c)

grant the Debtors such further relief as is just and proper.

Dated: Jericho, New York
     October 15, 2015

SILVERMANACAMPORA LLP
Proposed Attorneys for SG Blocks, Inc.,
SG Building Blocks, Inc. and Endaxi Infrastructure
Group, Inc.


By:  s/ Gerard R. Luckman
     Gerard R. Luckman
A Member of the Firm
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300

GRL/1817463.4/065531