# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re:

   SG BLOCKS, INC.,

                  Debtor.
----------------------------------------------------------x
In re:

   SG BUILDING BLOCKS, INC.,

                  Debtor.
----------------------------------------------------------x
In re:

   ENDAXI INFRASTRUCTURE GROUP, INC.,

                  Debtor.
----------------------------------------------------------x

Chapter 11

Case No.: 15-12790 (JLG)

Chapter 11

Case No.: 15-12791 (JLG)

Chapter 11

Case No.: 15-12792 (JLG)

**INTERIM ORDER
(1) AUTHORIZING THE DEBTORS
TO INCUR POST PETITION FINANCING,
ON AN INTERIM AND FINAL BASIS, WITH SUPERPRIORITY
OVER ADMINISTRATIVE EXPENSES AND SECURED BY
SUPERPRIORITY LIENS PURSUANT TO 11 U.S.C. §§105(a),
361, 364(c) AND 364(d), (2) AUTHORIZING THE USE OF CASH
COLLATERAL PURSUANT TO 11 U.S.C. §363(c) AND PROVIDING ADEQUATE
PROTECTION PURSUANT TO 11 USC §§361 AND 507(b), (3) SCHEDULING A
FINAL HEARING AND ESTABLISHING NOTICE REQUIREMENTS PURSUANT
TO BANKRUPTCY RULES 2002 AND 4001 AND GRANTING RELATED RELIEF**

**WHEREAS,** on October 15, 2015 (the "**Petition Date**"), SG Blocks, Inc. and its debtor affiliates (collectively, the "**Debtors**"), filed voluntary petitions for relief pursuant to chapter 11 of title 11, United States Code (the "**Bankruptcy Code**"); and

**WHEREAS,** the Debtors have continued in the management and operation of their businesses pursuant to Bankruptcy Code §§ 1107 and 1108, and no trustee or examiner has been appointed; and

**WHEREAS,** the Debtors have applied to the Court (the "**Application**") for interim and final authority: (i) pursuant to Bankruptcy Code §§ 105, 361, 362, 363, and 364, Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and

Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), (i) authorizing the use of "cash collateral," as such term is defined Bankruptcy Code § 363, in which Hillair Capital Investments L.P. ("**Hillair**"), Dillon Hill Capital, LLC ("**Dillon**"), Dillon Hill Investment Company, LLC ("**DHIC**"), Frank Casano ("**Casano**"), Scott Masterson ("**Masterson**") and Marc Nuccitelli ("**Nuccitelli**", and with Hillair, Dillon, DHIC, Casano, and Masterson, collectively, the "**Prepetition Lender**" and, together with the DIP Lender, the "**Lenders**") have an interest (the "**Cash Collateral**"), (ii) authorizing the Debtors to obtain debtor in possession financing ("**DIP Financing**") from Hillair, and any other lender that may become a party to the Debtor in possession Credit Agreement (also referred to as "**DIP Lender**") pursuant to terms set forth in the Debtor in Possession Credit Agreement ("**DIP Term Loan**") it proposes to enter into with the Debtors with any exceptions noted herein, (iii) providing adequate protection (as hereinafter defined) to the Prepetition Lender; (iv) vacating and modifying the automatic stay imposed by Bankruptcy Code § 362 to the extent necessary to implement and effectuate the terms and provisions of any such Order; and (v) scheduling, pursuant to Bankruptcy Rule 4001, a final hearing (the "**Final Hearing**") to be held before this Court to consider entry of a final order approving (a) the Debtors' obtaining DIP Financing and use of Cash Collateral and (b) the grant of adequate protection to Prepetition Lender, all on a final basis (the "**Final Order**"); and

**WHEREAS,** the Debtors have admitted, represented and stipulated to the Court, the following:

(a) Prior to the Petition Date, the Debtors entered into certain Prepetition Loan Documents, as that term is defined in the Application. Pursuant to the Prepetition Loan Documents, the Prepetition Lender made loans, advances, and other financial accommodations to and for the benefit of the Debtors secured by a first lien on, and security interest in substantially all of the Debtors' assets;

(b) As of the Petition Date, the Debtors were indebted to the Prepetition Lender under the Prepetition Loan Documents in an amount not less than: (i) $210,600 to Hillair on the Bridge Debenture; (ii) $2,489,760 on the 2014 Exchange Debentures; and (iii) $2,704,650 on the 2014 New Debentures, constituting principal obligations incurred directly by the Borrower, plus any unpaid interest, fees, costs and expenses (the "**Prepetition Obligations**");

(c) the Prepetition Lender is willing to permit the Debtors' use of its cash collateral upon the terms and conditions of the Prepetition Loan Documents and this Order;

(d) The successful operation of the Debtors' businesses and their ability to propose and consummate a chapter 11 plan is dependent on their ability to use cash collateral and obtain the additional loans and advances proposed to be made from the DIP Lender;

(e) The DIP Lender is willing to make post-petition loans, advances and other financial accommodations to the Debtors only upon the conditions contained in this Interim Order;

(f) The Debtors are unable to obtain sufficient levels of unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense necessary to maintain and conduct their business;

(g) The Debtors are unable to obtain secured credit allowable only under Bankruptcy Code § 364(c)(1) and (c)(2), except under the terms and conditions provided in this Interim Order; and

(h) The Debtors reasonably and in good faith believe that the loans, advances, and other financial accommodations to be obtained pursuant to the DIP Facility (as that term is defined in the Application) are sufficient to fund all projected

legitimate and allowable expenses of their chapter 11 cases incurred during the term of the DIP Facility;

and

**WHEREAS,** the Court held an interim hearing with respect to the Application on October 21, 2015 (the "**Interim Hearing**"); and the Court, having considered the Application and the proceedings before the Court at the Interim Hearing; and all objections, if any, to the relief requested in the Application having been withdrawn, resolved, or overruled by the Court as reflected on the record of the Interim Hearing;

**THE COURT HEREBY FINDS AND DETERMINES THAT:**[1]

(a)     the Debtors have given notice of the Interim Hearing, and the relief sought in the Application, in accordance with Bankruptcy Rule 4001;

(b)     the Court has core jurisdiction over the Debtors' bankruptcy cases, the Application, and the parties and property affected by this Interim Order pursuant to 28 U.S.C. §§ 157(b) and 1334, and venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409;

(c)     it is in the best interest of the Debtors' estates that they be authorized, on an interim basis, to utilize Cash Collateral and to obtain post-petition secured financing from the DIP Lender, under the terms and conditions of the DIP Facility, as such is necessary to permit the orderly administration of the Debtors' estates;

(d)     the extension of credit and financial accommodations under the DIP Facility are in good faith, and Lender is entitled to the protections of Bankruptcy Code §§ 363(m) and 364(e); and

(e)     good and sufficient cause exists for the issuance of this Interim Order;

---

[1] To the extent any findings of fact constitute conclusions of law, they are adopted as such, and vice versa, pursuant to Fed. R. Bankr. P. 7052.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. The Application is granted on an interim basis. The Debtors are authorized, on an interim basis: (i) pursuant to Bankruptcy Code §§ 105, 361, 363, and 364 to use Cash Collateral; and (ii) pursuant to Bankruptcy Code §§ 363 and 364(c), to obtain post-petition secured financing from the DIP Lender pursuant to the terms and conditions of the DIP Facility.

2. Subject to the Carve-Out (defined below), to the extent the Debtors use Cash Collateral that is subject to the interest of the Prepetition Lender, the Prepetition Lender has consented to the limited use of its Cash Collateral provided that it is used in accordance with and solely for the purposes set forth in the Approved Budget (as defined below), and subject to the terms of the Prepetition Loan Documents and this Interim Order. As adequate protection for the Debtors' use of the Prepetition Lender's Cash Collateral, the Prepetition Lender is hereby granted, to the extent of the Debtors' diminution of the Cash Collateral, a first priority, and enforceable replacement lien (the "**Replacement Lien**") in all of the Debtors' presently owned or hereafter acquired property and assets, whether such property and assets were acquired before or after the Petition Date, of any kind or nature, whether real or personal, tangible, or intangible, wherever located, and the proceeds and products thereof (excluding causes of action brought pursuant to Bankruptcy Code §§ 544, 545, 547, 550, and 553 and the proceeds and products thereof (the "**Avoidance Actions**")). Such lien shall be immediately junior and subordinate to the liens and security interests granted to the DIP Lender in the DIP Collateral arising from the obligations of the Debtors under the DIP Facility and the Carve-Out (defined below).

3. The claims of the Prepetition Lender for any diminution in the value of its interests in the Debtors assets (the "**Prepetition Collateral**") from the Petition Date resulting from (a) the use, sale, lease, disposition, shrinkage, decline in market value, consumption or physical deterioration of the Prepetition Collateral by the Debtors, and (b) the imposition of the automatic stay pursuant to § 362 of the Bankruptcy Code shall constitute allowed claims against the Debtors with priority over all administrative expenses (other than any fees arising under 28

U.S.C. § 1930), diminution claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in §§ 503(b) and 507(b) of the Bankruptcy Code, and over all administrative expenses or other claims arising under §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (collectively, the "**Prepetition Lender Superpriority Claim**"), whether or not such expenses or claims may become secured by judgment lien or other non-consensual lien, levy, or attachment or otherwise, which allowed Prepetition Lender Superpriority Claim shall be payable from and have recourse to all prepetition and post-petition property of the Debtors and all proceeds thereof; provided, however, that the Prepetition Lender Superpriority Claim granted to Prepetition Lender shall be junior and subordinate to the Carve-Out and the DIP Lender's superpriority claim.

4.    The Debtors are authorized and empowered to perform in accordance with the DIP Facility and to borrow money on a first priority secured basis from the DIP Lender from time to time in an amount not to exceed, on an interim basis, $304,771.37, to be used by the Debtors strictly in accordance with the terms and provisions of the DIP Facility and an agreed-upon budget setting forth on a line-item basis the Debtors' anticipated cumulative cash receipts and expenditures on a weekly basis and all necessary and required cumulative expenses which the Debtors expect to incur during each week of the Initial Approved Budget, a copy of which is annexed hereto (the "**Approved Budget**").  The DIP Facility, the DIP Term Loan documents, and the terms, conditions and covenants set forth therein are approved and shall be deemed incorporated into this Interim Order.

5.    Pursuant to Bankruptcy Code §§ 363, 364(c), and 364(d)(1), as security for the DIP Obligations, the Debtors are hereby authorized to and hereby grant to the DIP Lender and Hillair Capital Management LLC, in its capacity as collateral agent for the benefit of the DIP Lender (the "**Collateral Agent**"), a valid, binding, and enforceable lien, mortgage, and/or security interest (a "**Lien**," and as so granted to the DIP Lender and the Collateral Agent, the

"**DIP Facility Lien**") in all of the Debtors' presently owned or hereafter acquired property and assets, whether such property and assets were acquired before or after the Petition Date, of any kind or nature, whether real or personal, tangible, or intangible, wherever located, and the proceeds and products thereof (collectively, the "**DIP Collateral**"). Notwithstanding the foregoing, the DIP Collateral shall not include the Avoidance Actions.

6. Pursuant to Bankruptcy Code § 364(c)(2), the DIP Lender and the Collateral Agent are hereby granted and shall have a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon any and all DIP Collateral that is not subject to valid, perfected, non-avoidable and enforceable liens in existence as of the Petition Date or valid liens in existence as of the Petition Date that are perfected subsequent to such date to the extent permitted by Bankruptcy Code § 546(b).

7. Pursuant to Bankruptcy Code § 364(d)(1), the DIP Lender and the Collateral Agent are hereby granted and shall have a valid, binding, continuing, enforceable, fully-perfected first priority, priming senior security interest in and lien upon all DIP Collateral that is subject to pre-petition liens securing the pre-petition obligations and all other security interests and liens on the DIP Collateral (other than the liens of the DIP Lender), except with respect to any valid, perfected and unavoidable interests in such property arising out of liens to which the holders of pre-petition liens become subject subsequent to the Petition Date as permitted by Bankruptcy Code § 546(b).

8. The DIP Facility Lien shall be senior to and shall not be subject or subordinate to (a) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under Bankruptcy Code § 551 or (b) subject to applicable law, any liens arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors other than as expressly permitted under the DIP Facility. The DIP Liens are subject only to the Carve-Out (defined below).

9. Pursuant to Bankruptcy Code §§ 363 and 364(c), all of the Debtors' obligations to the DIP Lender under the DIP Facility (the "**DIP Obligations**" and, together with the Prepetition Obligations, the "**Obligations**") shall be allowed administrative expenses of the Debtors' estates having priority in payment over any other indebtedness and/or obligations now in existence or incurred hereafter by the Debtors and over all administrative expenses or charges against property arising in the Debtors' chapter 11 cases and any superseding chapter 7 case, including without limitation those specified in Bankruptcy Code §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 1113 or 1114, subject only to the Carve-Out (defined below). The time of payment of the DIP Obligations shall not be altered, extended or impaired by any plan or plans of reorganization that may hereafter be accepted or confirmed.

10. Notwithstanding the Replacement Lien and the DIP Facility Lien, the Debtors may use the Prepetition Collateral and the DIP Collateral, including Cash Collateral, to pay (the following subparagraphs, collectively, the "**Carve-Out**"):

(a) the statutory fees of the United States Trustee pursuant to 28 U.S.C. § 1930(a) and any unpaid fees due and owing to the Clerk of the Court (collectively, the "**Statutory Fees**"); and

(b) allowed professional fees and expenses of the Debtors' bankruptcy counsel retained pursuant to final Bankruptcy Court Order (i) to the extent incurred prior to the delivery of a Default Notice or the occurrence of the Maturity Date, whichever is earlier and (ii) to the extent such fees and expenses are consistent with the budget as it relates to professional fees and expenses subject to the limitations on the use of such funds set forth in this Order, and up to an additional $25,000 but not to exceed $75,000 in the aggregate; provided further that following an Event of Default any amounts actually paid to professionals by any means will reduce the Carve-Out on a dollar-for-dollar basis; and provided, further, that no portion of the Carve-Out, DIP Facility, DIP Collateral, Prepetition Collateral or Cash Collateral shall include, apply to, or be available

for any fees, costs or expenses incurred by any party, including the Debtors or any statutory committee that may be appointed, in connection with (y) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against any DIP Lender or the Prepetition Lender, including, without limitation, (a) challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the DIP Obligations, DIP Superpriority Claims (as set forth in paragraph 9 of this Interim Order), or DIP Facility Lien, in respect thereof, (b) challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the Prepetition Obligations, Prepetition Lender Superpriority Claims, Replacement Liens, or liens on Prepetition Collateral in respect thereof or (z) asserting any claims or causes of action, including, without limitation, claims or actions to hinder or delay the DIP Lender's assertion, enforcement or realization on the DIP Collateral in accordance with the DIP Facility loan documents or this Interim Order; and

(c)    any costs and fees of a chapter 7 Trustee, should one be appointed, however, not to exceed the amount of $10,000.

11.    In connection with a Final Order, and as consideration for the Carve-Out, the Debtors will seek, under Bankruptcy Code § 506(c), a determination that the Debtors and any other party in interest irrevocably waive all claims and rights, if any, they might otherwise assert against the Prepetition Collateral or the DIP Collateral pursuant to Bankruptcy Code § 506(c). Except from and pursuant to the terms of the Carve-Out, (a) no entity in the course of the Debtors' bankruptcy cases shall be permitted to recover from the Prepetition Collateral or the DIP Collateral (whether directly or through the grant of derivative or equitable standing in the name of the Debtors or the Debtors' estates) any cost or expense of preservation or disposition of the Prepetition Collateral or the DIP Collateral, including, without limitation, expenses and charges as provided in Bankruptcy Code § 506(c), and (b) no entity shall be permitted to

recover from the Prepetition Collateral or the DIP Collateral, or assert against the DIP Lender, any claim with respect to any unpaid administrative expense of the Debtors' bankruptcy cases, whether or not the Debtors' payment of such administrative claim was contemplated by or included in any budget approved by the Court. Subject to approval of the Final Order, The Lenders shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

12. The Official Committee of Unsecured Creditors, if one is appointed (the "**Committee**"), and all non-Debtor parties in interest (including any trustee appointed or elected in the case prior to the Challenge Period Termination Date) shall have time in accordance with Local Rule 4001-2(f) to investigate the validity, perfection, and enforceability of the Prepetition Obligations and the Prepetition Lender's liens, or to assert any other claims or causes of action against the Prepetition Lender. The Committee shall have sixty (60) days from its appointment of counsel, or, if no Committee is formed or the Committee fails to appoint counsel, any party-in-interest, may commence a challenge proceeding provided such action is commenced within sixty (60) days from the entry of a Final Order (or a longer period for cause shown before the expiration of such period) (the "**Challenge Period**"). In the event that no contested matter or adversary proceeding is commenced during the Challenge Period (the "**Challenge Period Termination Date**"), then, upon the Challenge Period Termination Date, any and all such challenges and objections by any party (including, without limitation, any chapter 11 or chapter 7 trustee appointed in the Debtors' bankruptcy cases or in any successor case) shall be deemed to be forever waived, barred and discharged and the Debtors' stipulations contained in this Interim Order and the Final Order shall be binding on all persons, entities, creditors, interest holders and parties in interest in the Debtors' bankruptcy cases or any successor case, and upon the Challenge Termination Period the Prepetition Obligations and liens on the Prepetition Collateral shall be deemed to be fully and finally allowed under the Bankruptcy Code for all purposes in connection with these chapter 11 cases and any successor case. Only those

parties in interest that have properly and with requisite standing initiated an adversary proceeding or contested matter prior to the Challenge Period Termination Date shall be permitted to prosecute such adversary proceeding or contested matter, except that any Committee shall be deemed to have proper standing for this purpose. If any such challenge is timely commenced within the Challenge Period, the agreements, stipulations and findings contained in this Interim Order shall nonetheless remain binding and preclusive on the Debtors and their estates and their creditors, the Committee, if any, equity holders, and all other parties in interest in the Debtors' bankruptcy cases, except to the extent that such findings or admissions are expressly and successfully challenged and the Court enters a final order with respect thereto.

13. The automatic stay provisions of Bankruptcy Code § 362 are hereby modified to permit (a) the Debtors, the DIP Lender and the Collateral Agent to implement and perform the terms of the DIP Facility, and (b) the Debtors to create, and the Lenders and/or the Collateral Agent to perfect, the Replacement Lien, DIP Facility Lien, and any other Liens granted hereunder. The Debtors, the Lenders and the Collateral Agent shall not be required to enter into any additional security agreements to create, memorialize, and/or perfect the Replacement Lien or the DIP Facility Lien, or to file UCC financing statements or other instruments with any other filing authority or take any other action to perfect the Replacement Lien or the DIP Facility Lien, which shall be and is deemed valid, binding, enforceable and automatically perfected by the docket entry of this Interim Order by the Clerk of this Court. If, however, the Lenders and/or the Collateral Agent, in their sole and absolute discretion, shall elect for any reason to enter into, file, record, or serve any such financing statements or other documents with respect to the Replacement Lien or the DIP Facility Lien, then the Debtors shall execute same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time and on the date of the docket entry of this Interim Order by the Clerk of the Court.

14. Each of the following shall constitute an "**Event of Default**" for purposes of this Interim Order:

(a) the Debtors' chapter 11 cases are either dismissed or converted to chapter 7 cases pursuant to an order of the Court, the effect of which has not been stayed;

(b) a chapter 11 trustee, or an examiner with expanded powers beyond those set forth in Bankruptcy Code §§ 1106(a)(3) and 1106(a)(4), or any other responsible person or officer of the Court with similar powers, is appointed by order of the Court, the effect of which has not been stayed;

(c) the Debtors file a plan of reorganization that does not provide for the payment in full, in cash, of the DIP Obligations upon the effective date thereof, unless otherwise agreed by the DIP Lender in its sole and absolute discretion.

(d) the Debtors cease operations of their businesses or take any material action for the purpose of effecting such cessation without the prior written consent of the Lenders;

(e) this Interim Order is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall materially adversely affect the rights of the Lenders hereunder or shall materially adversely affect the priority of any or all of the Obligations, the Replacement Lien, or the DIP Facility Lien, and which is not acceptable to the Lenders, in their sole discretion;

(f) the Debtors fail to comply with or perform, in any material respect, the terms and provisions of this Interim Order, the Prepetition Loan Documents, or the DIP Loan Agreement, including, without limitation, using the Prepetition Collateral or the DIP Collateral other than in accordance with the provisions of this Interim Order, the Prepetition Loan Documents, and the DIP Loan Agreement;

  (g) the Court enters an order authorizing the sale or other disposition of any of the Prepetition Collateral or the DIP Collateral without the consent of the relevant Lenders;

  (h) any superpriority claim or lien equal or superior in priority to that granted to the Prepetition Lender or the DIP Lender and the Collateral Agent are granted by the Court;

  (i) the Court enters an order, the effect of which has not been stayed, granting relief from the automatic stay to a third party with respect to material assets of the Debtors' estates, unless Lenders have given prior written consent to such relief;

  (j) the Debtors file, or the Court enters an order confirming, a plan of reorganization, which plan is not in form and substance acceptable to the Lenders;

  (k) the 363 Sale Milestones (as that term is described in the DIP Loan Agreement) are not met within the period specified therefor, as the same may be extended in the sole discretion of the DIP Lender.

15. Upon the occurrence of an Event of Default and the giving five (5) days written notice thereof by the Prepetition Lender or the DIP Lender to counsel to the Debtors, the Committee and the U.S. Trustee (the "**Notice Parties**"), the Prepetition Lender, the DIP Lender and/or the Collateral Agent may move on an expedited basis, but in no event sooner than seven (7) calendar days, seeking entry of an order of the Court on notice to the Notice Parties, authorizing the Prepetition Lender, the DIP Lender and/or the Collateral Agent, as the case may be, to exercise its rights and remedies pursuant to the Prepetition Lender's prepetition loan to the Debtors, the DIP Facility, and/or applicable law, including, without limitation, to foreclose on all or any portion of the Prepetition Collateral or the DIP Collateral, or to collect accounts receivable and other monies owing to the Debtors and apply the proceeds thereof in satisfaction of the Obligations.

16. The Debtors shall continue to keep the Prepetition Collateral and the DIP Collateral fully insured against all loss, peril and hazard and make the DIP Lender and Collateral Agent loss payee as its interests appear under such policies. The Debtors shall provide the DIP Lender and the Collateral Agent with proof of the foregoing within three business days of written request and will give the DIP Lender and the Collateral Agent reasonable access to its records in this regard.

17. The Lenders and the Collateral Agent shall have the right, at any time during the Debtors' normal business hours or as otherwise agreed by the parties, to inspect, audit, examine, check, make copies of or extracts from the books, accounts, checks, orders, invoices, bills of lading, correspondence and other records of the Debtors, and to inspect, audit and monitor all or any part of the Prepetition Collateral or the DIP Collateral and the Debtors' business premises, and the Debtors shall make all of same reasonably available to the Lenders and the Collateral Agent and their representatives, and shall cause its personnel and representatives to cooperate with the Lenders and the Collateral Agent and their representatives for such purposes.

18. This Interim Order shall be binding upon and inure to the benefit of the Lenders, the Debtors, and their respective successors and assigns, including, without limitation, any trustee, responsible officer, examiner, estate administrator or representative, or similar person appointed in any case for any of the Debtors under any chapter of the Bankruptcy Code. Except as set forth herein with respect to the Carve-Out, no rights are created under this Interim Order for the benefit of any creditor of the Debtors, any other party in interest in the Debtors' bankruptcy cases, or any other persons or entities, or any direct, indirect or incidental beneficiaries thereof, with the exception of the Lenders.

19. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any orders which may be entered confirming any plan of reorganization or converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.

The terms and provisions of this Interim Order, as well as the Obligations, the Replacement Lien, and the DIP Facility Lien, shall continue in this or any superseding case under the Bankruptcy Code, and shall continue notwithstanding any dismissal of the Debtors' bankruptcy cases, and such claims and Liens shall maintain their priority as provided by this Interim Order until the Obligations are irrevocably satisfied in full.

20. To the extent that any of the provisions of this Interim Order shall directly conflict with any of the provisions of the Prepetition Loan Documents or the DIP Loan Agreement, this Interim Order is deemed to control and shall supersede the conflicting provisions. To the extent that any of the provisions of this Interim Order shall conflict with any order of the Court authorizing the Debtors to continue the use of pre-petition bank accounts, cash management systems, and/or business forms, or any similar orders, then this Interim Order is deemed to control and supersede the conflicting provisions in said orders.

21. Subject to entry of the Final Order, the Lenders shall be entitled to all of the rights and benefits of § 552(b) of the Bankruptcy Code and the "equities of the case" exception therein shall not apply.

22. The terms and conditions of this Interim Order shall be effective and immediately enforceable upon its entry by the clerk of this Court notwithstanding any potential application of Fed. R. Bankr. P. 6004(h) or otherwise.

23. The Debtor and the Lenders may enter into amendments, waivers, or consents with respect to the Prepetition Loan Documents or the DIP Loan Agreement without the need for further Court approval provided that (a) the Prepetition Loan Documents or the DIP Loan Agreement as so modified is not materially different from that approved hereby, (b) notices of all amendments are filed with the Court, and (c) notices of all amendments (other than those that are ministerial or technical and do not adversely affect the Debtors) are provided in advance to all parties requesting notice, and the United States Trustee.

24.     Notwithstanding anything to the contrary set forth in this Interim Order, in the event that any of the Lenders gives a Default Notice based upon the Event of Default specified in paragraph 10(b) of this Interim Order, a chapter 11 trustee or person with similar powers described therein shall not be bound by the provisions of this Interim Order with respect to seeking entry of an order authorizing the (a) non-consensual use of Cash Collateral in which Lenders have an interest, or (b) obtaining of credit or the incurring of indebtedness pursuant to Bankruptcy Code §§ 364(c), without prejudice to the Lenders' rights to oppose same.

25.     The hearing to approve the Application on a final basis shall be held on **November __, 2015 at __:__ _.m.** (the "**Final Hearing**") before the Honorable _____ United States Bankruptcy Judge for the Southern District of New York.

26.     On or before **October __, 2015**, the Debtors shall serve a copy of this Interim Order, the Application (together with exhibits), and Notice of the Final Hearing on entry of the Final Order by electronic transmission, facsimile or overnight mail, within two (2) days after entry of the Interim Order, upon (a) the Office of the United States Trustee, (b) attorneys for Hillair, (c) the Debtors' twenty largest creditors, or counsel to the Committee, if one is appointed, (d) the Debtors' remaining secured creditors, (e) the Securities and Exchange Commission, and, by first class mail, on (f) the District Director for the Internal Revenue Service, and (g) all parties that have filed notices of appearances and requests for notices in the Debtors' chapter 11 cases.

27.     Any party in interest objecting to the approval of the Application on a final basis shall file written objections with the Clerk of the Bankruptcy Court with a courtesy copy delivered to the Honorable James L. Garrity, Jr., United States Bankruptcy Judge of the United States Bankruptcy Court for the Southern District of New York, at the One Bowling Green, New York, New York 10004-1408, so as to be received no later than **November __, 2015** and served so as to be received on or before noon on such date by: (i) Debtors' counsel, SilvermanAcampora LLP, 100 Jericho Quadrangle, Jericho, New York, 11753, Attn: Gerard R. Luckman; (ii) counsel

to the Official Committee of Unsecured Creditors, if one is appointed; (iii) counsel to Hillair and the Collateral Agent, McDonald Hopkins LLC, 600 Superior Avenue, East, Suite 600, Cleveland, Ohio 44114, Attn: Scott N. Opincar; (iv) the Debtors' remaining secured creditors, and (v) the Office of United States Trustee, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Andrea B. Schwartz.

Dated: New York, New York
      October __, 2015

                                            _____
                                            Honorable James L. Garrity, Jr.
                                            United States Bankruptcy Judge