UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:                                          Chapter 11

  SG BLOCKS, INC., *et al.*,                    Case No.:  15-12790 (JLG)

                       Debtors.        (Jointly Administered)

------------------------------------------------------------x


### DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION FOR SG BLOCKS, INC., *ET AL.* <u>UNDER CHAPTER 11 OF THE BANKRUPTCY CODE</u>


**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.**


**SILVERMANACAMPORA LLP**
Attorneys for the Debtors
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Gerard R. Luckman
Brian Powers


Dated February 29, 2016

**BANKRUPTCY COURT APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE BANKRUPTCY COURT APPROVAL, OR ITS RECOMMENDATION ON THE MERITS, OF DEBTORS' PLAN OF REORGANIZATION**

## I.    INTRODUCTION

SG Blocks, Inc., SG Building Blocks, Inc. and Endaxi Infrastructure Group, Inc., the above-captioned debtors and debtors-in-possession (the "**Debtors**") submit this Disclosure Statement (the "**Statement**") pursuant to section 1125 of title 11, United States Code (the "**Bankruptcy Code**"). The Statement is provided to all of the Debtors' known creditors in order to disclose the information deemed to be material, important, and necessary for the Debtors' creditors to arrive at a reasonably informed decision in exercising their rights to vote on the Plan of Reorganization proposed by the Debtors (the "**Plan**").[1]  A copy of the Plan is annexed hereto as **Exhibit A**.  Also accompanying the Plan and Statement is a creditor's voting ballot (the "**Ballot**") for the acceptance or rejection of the Plan, together with a copy of the Order approving the Statement and Scheduling a Hearing on Confirmation of the Plan.

**Definitions and Exhibits**

Definitions.  The definitions and designations of terms and names in the Plan apply to the Statement and you should refer to the Plan for such definitions and designations.

Exhibits.  All Exhibits to the Statement are incorporated as if fully set forth and are a part of the Statement.

**Notice to Creditors**

The Debtors believe that confirmation and implementation of the Plan is in the best interest of the Debtors' estates, their creditors and Interest holders.  Based on the liquidation analysis annexed hereto as **Exhibit B** (the "**Liquidation Analysis**"), the Debtors believe that the distributions provided for in this Plan exceed the distributions that unsecured creditors would receive if the Debtors' assets were liquidated.  For this reason, the Debtors believe that approval of the Plan is the best opportunity for Creditors to receive payments with respect to Allowed Claims.

Pursuant to Bankruptcy Code § 1125, on March __, 2016, the Bankruptcy Court approved this Statement for submission to the holders of Claims against, or Interests in, the Debtors.  On _____, 2016 at __:00 _.m. (the "**Confirmation Hearing**") a hearing will be held to consider confirmation of the Plan before the Honorable James L. Garrity, Jr., United States Bankruptcy Judge, United States Bankruptcy Court, One Bowling Green, New York, New York.

The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan be served and filed on or before **4:00 p.m.** on _____, 2016.  The Confirmation Hearing may be adjourned by the Bankruptcy Court without further notice except for the filing of a notice of the adjourned date on the Bankruptcy Court's docket, or the announcement of the adjourned date at the Confirmation Hearing (or at any subsequent adjourned date for the Confirmation Hearing).  Creditors entitled to vote may vote on the Plan by filling out and mailing the accompanying Ballot to SilvermanAcampora LLP ("**SilvermanAcampora**"), attorneys for the Debtors, 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753, Attention: Brian Powers, Esq., so that the Ballot is received on or before _____, 2016 at **4:00 p.m.**

---

[1]  Capitalized terms not otherwise defined in this Statement shall have the meanings set forth in the Plan.

Under the Bankruptcy Code, acceptance of a plan by a class of claims occurs when holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the allowed claims of that class that cast ballots for acceptance or rejection of the plan, vote to accept the plan. Thus, acceptance of the Plan by a particular class will occur only if at least two-thirds in dollar amount and a majority in number of the holders of the claims in that class, that cast their Ballots, vote to accept the Plan. Under the Bankruptcy Code, acceptance of a plan by a class of Interests occurs when holders of at least two-thirds (2/3) in amount of such Interests that cast ballots for acceptance or rejection of the Plan, vote to accept the Plan. A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that such acceptance or rejection was not solicited or produced in good faith or in accordance with the provisions of the Bankruptcy Code.

Bankruptcy Code § 1129(b) permits confirmation of the Plan, notwithstanding rejection by one or more Classes of Claims, if: (i) at least one impaired Class has accepted the Plan; and (ii) the Bankruptcy Court finds that the Plan does not "discriminate unfairly," and is "fair and equitable" with respect to the rejecting Class. This procedure is generally referred to as "cram-down."

The purpose of this Statement is to inform all Claim holders of the information deemed to be material, important and necessary in order to make an informed judgment about the Plan, and to vote for the acceptance or rejection of the Plan, where voting is necessary.

The approval by the Bankruptcy Court of this Statement does not constitute a recommendation by the Bankruptcy Court as to the merits of the Plan, only that the Statement contains "adequate information" from which creditors may form an opinion as to the merits of the Plan.

The financial information contained in this Statement has not been subject to a certified audit. Accordingly, the Debtors are unable to warrant or represent that the information is accurate and complete in all respects, although the Debtors have used their best efforts to set forth information and disclosures which are complete and accurate. This Statement has been prepared on the basis of assumptions which the Debtors believe to be reasonable, however, there can be no assurance that these assumptions will prove to have been accurate.

## II.   <u>EXPLANATION OF CHAPTER 11</u>

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under chapter 11, a debtor may reorganize or liquidate its business and assets.

Since the Petition Date, the Debtors have managed their affairs as debtors and debtors in possession under Bankruptcy Code §§ 1107 and 1108.

The formulation and confirmation of a plan of reorganization or liquidation is the principal purpose of a chapter 11 case. A chapter 11 plan sets forth the means of satisfying or discharging the claims against or interests in a chapter 11 debtor. Chapter 11 does not require that each holder of a claim against a debtor vote in favor of a plan in order for the Bankruptcy Court to approve a plan. If any class of claimants is impaired by a plan, the plan must be accepted by at least one "impaired" class of claims or interests. A claim or interest is deemed impaired if the plan provides that the claimant: (i) will not be repaid in full; (ii) will have any of its legal rights altered; or (iii) has an interest that is adversely affected. The holder of an impaired claim or interest is entitled to vote to accept or reject the plan if the claim or interest is an allowed claim or interest under Bankruptcy Code § 502, or temporarily allowed for voting purposes under Bankruptcy Rule 3018.

### III.    THE DEBTORS PRIOR TO THE CHAPTER 11 CASES

**Description of the Debtors' Business**

The Debtors' primary business is to work with architects, developers, builders, and commercial clients to design and build code-engineered, modified cargo shipping containers to meet the growing demand for safe and green construction. Rather than consuming new steel and lumber, the Debtors capitalize on the structural engineering and design parameters a shipping container must meet and repurposes them for use in construction of new structures. The Debtors' containers are used in residential, commercial, and military structures, including major fast food and retail chain locations.  The Debtors work closely with third party partner companies to source materials for each project need, and the Debtors provide their technical experience and expertise to assist their partners to meet the client's exact specifications.  The Debtors do not perform the modifications or deliveries themselves, but rather all manufacturing and logistics are handled by third party partners.  On July 23, 2007, the Debtors entered into an exclusive, 10-year Collaboration and Supply Agreement with ConGlobal Industries, Inc. ("**ConGlobal**") to provide the Debtors with materials, supplies, and labor for all of their domestic orders.  ConGlobal is also a minority shareholder of SG Blocks, owning less than five (5%) percent of SG Blocks' outstanding common stock.

**The Debtors' Current Ownership and Structure**

SG Blocks is a publicly traded company, which has approximately 107 shareholders.  SG Blocks owns 100% of the stock of Building Blocks and Endaxi, as well as 99.99% of the stock of SG Blocks Sistema De Constucao Brasileiro LTDA ("**SG Brazil**").  Building Blocks and Endaxi are not operating entities, and the Debtors do not believe that either Building Blocks or Endaxi have any assets or liabilities, except as guarantors on the pre-petition secured debt of SG Blocks (described below). Endaxi will be closed shortly after the Effective Date and will cease to exist.  SB Brazil was formed in 2011 to explore potential business opportunities in Brazil, and is currently inactive.

**Prepetition Secured Debt**

Due to the nature of the Debtors' business, and the fact that the Debtors' products were relatively new to the industry, the Debtors were unable to obtain conventional financing from a traditional lender.  Accordingly, between April 2014 and the Petition Date, through a series of Securities Purchase Agreements, Securities Exchange Agreements, and the issuance of Senior Convertible Debentures, SG Blocks obtained secured financing from Hillair Capital Investments L.P. ("**Hillair**"), Dillon Hill Capital, LLC ("**Dillon**"), Dillon Hill Investment Company, LLC ("**DHIC**"), Frank Casano ("**Casano**"), Scott Masterson ("**Masterson**") and Marc Nuccitelli ("**Nuccitelli**", and with Hillair, Dillon, DHIC, Casano, and Masterson, collectively, the "**Prepetition Lender**") in the aggregate amount of $5,405,010.00.  Both Building Blocks and Endaxi are guarantors on all debts owed by SG Blocks to the Prepetition Lender.  As of the Petition Date, the entire aggregate amount of the secured debt owed to the Prepetition Lender remains outstanding.

Pursuant to the terms of the foregoing agreements, all of the secured debt owing to the Prepetition Lender is convertible, at the Prepetition Lender's discretion, to shares of common stock in SG Blocks.  If the Prepetition Lender elected to convert its secured debt to equity in SG Blocks, the newly issued common stock would seriously dilute the respective ownership percentages of SG Blocks' current equity holders.

**The Debtors' Liabilities and Assets**

As of the Petition Date, the Debtors, on an unaudited basis, had total assets of approximately $332,209.21. Their total liabilities, including the $5,405,010.00 in secured debt owed to the Prepetition Lender, are approximately $5,774,929.09. The Debtors' gross revenue in 2013 was approximately $5,732,776, and increased in 2014 to $6,036,953. However, the Debtors sustained net losses in 2013 and 2014 of $2,163,302 and $1,537,315, respectively, largely due to the Debtors' efforts to continue to grow in the industry and change industry perceptions with respect to the Debtors' products. In addition, the Debtors have substantially increased their profit margins from 2013 through the Petition Date.

**The Pre-Petition Secured Debt and Proposed Conversion to Equity Under the Plan:**

The Debtor's pre-petition secured debt consisted of convertible debentures in the following outstanding amounts:

Hillair Capital Investments LP – $3,352,440.00
Dillon Hill Capital LLC – $741,000.00
Dillon Hill Investment Co. LLC – $370,500.00
Frank Casano – $663,936.00
Marc Nuccitelli – $111,150.00
Scott Masterson – $165,984.00

Total – $5,405,010

On the Effective Date, the $5,405,010 of Pre-Petition Secured Debt will be exchanged and converted into 5,405,010 shares of new Series A Convertible Preferred Stock, par value of $1.00 per share, of SG Blocks, Inc. ("SGB"). Each share of SGB's Series A Convertible Preferred Stock is convertible into one share of common stock of SGB upon: (i) a change of control, or (ii) a majority vote of the Series A Convertible Preferred Stock to convert. In addition, any individual holder of Series A Convertible Preferred Stock may convert its Series A Convertible Preferred Stock into common stock at any time. The Series A Convertible Preferred Stock shall be voted on a one vote per share basis.

The Series A Convertible Preferred Stock shall have a liquidation preference at $1 per share.

The Series A Convertible Preferred Stock shareholders and the holders of the common stock of SGB shall vote together and not as separate classes, and the Series A Convertible Preferred Stock shall be counted on an "as converted" basis, thereby giving the holders of the Series A Convertible Preferred Stock control of SGB.

The Series A Convertible Preferred Stock shall represent 82.5% of the fully diluted equity of SGB. Hillair will own approximately 51% of the fully diluted equity (prior to any conversion of the Exit Facility). SGB will reserve 10%of its shares for Management under a vesting plan described in Article IV below.

**Current Equity of SGB – To Receive 7.5% of the Equity of SGB**

Upon the conversion to Equity of the pre-petition secured debt. Current equity holders of SGB shall receive new shares of common stock of SGB totaling in the aggregate 7.5% of the equity of SGB.

BPOWERS/1846376.3/065531

The Plan provides that fractional shares shall be rounded up or down, such that no fractional shares will be issued. The shares of new common stock will be issued on a pro-rata basis.

### The Debtors' Troubles and Current Forecast

As stated above, since the formation of SG Blocks in 2011, the Debtors have focused on expanding their business and securing contracts with new customers. The Debtors, as relative newcomers to the industry offering a novel product, have been slow to gain traction with some of their larger target customers, such as fast food restaurants, retail locations, and the U.S. military. However, largely due to the Debtors' marketing efforts and dissemination of information with respect to the Debtors' product, refurbished shipping containers have become an accepted and sought after alternative to traditional materials in construction.

The Debtors are optimistic about their business prospects moving forward, as the Debtors currently have numerous outstanding bids on tens of millions of dollars of projects, many of which the Debtors believe they will be able to secure. In addition, because of previous successful projects that the Debtors have completed for major customers, the Debtors have seen a recent increase in repeat orders of significant size. Accordingly, the Debtors believe that, with the ability to restructure their debts and obtain additional financing, the Debtors will emerge from a chapter 11 case as successful and profitable companies.

## IV.    THE DEBTORS' CHAPTER 11 CASE

### Commencement and Conduct of the Chapter 11 Case

After the Petition Date, the Debtors, as debtors in possession, have been authorized to manage their businesses and assets in the ordinary course of business without specific Bankruptcy Court authorization.

In connection with the Chapter 11 Case, the Debtors were provided professional services by SilvermanAcampora, as general bankruptcy counsel. The employment of SilvermanAcampora was approved by the Bankruptcy Court on January 21, 2016, effective as of the Petition Date (ECF Doc. No. 38).

### First Day Motions

On the Petition Date, the Debtors filed the following motions seeking relief critical to avoid irreparable harm to the Debtors and their businesses (collectively, the "**First Day Motions**"). On October 21, 2015, the Bankruptcy Court conducted an emergency hearing to consider the First Day Motions designed to facilitate the Debtors' transition into chapter 11 by approving certain regular business practices that may have not been specifically authorized under the Bankruptcy Code and/or required specific Bankruptcy Court approval.

    A.    Emergency Application for Orders (1) Authorizing the Debtors to Incur Post Petition Financing, on an Interim and Final Basis, with Superpriority over Administrative Expenses and Secured by Superpriority Liens Pursuant to 11 U.S.C. §§105(a), 361, 364(c) and 364(d), (2) Authorizing the Use of Cash Collateral Pursuant to 11 U.S.C. §363(c) and Providing Adequate Protection Pursuant to 11 U.S.C. §§361 and 507(b), (3) Scheduling a Final Hearing and Establishing Notice Requirements Pursuant to Bankruptcy Rules 2002 and 4001 and Granting Related Relief (ECF Doc. No. 8) (the "**DIP Financing Motion**").

BPOWERS/1846376.3/065531

The DIP Financing Motion requested authority, on an interim and final basis, for the Debtors to (i) utilize the cash collateral of the Prepetition Lender during its chapter 11 case, (ii) obtain debtor in possession financing of up to $600,000.00.  The Bankruptcy Court approved the DIP Financing Motion on an interim basis on October 29, 2015 (ECF Doc. No. 19), and on a final basis on November 13, 2015 (ECF Doc. No. 25).

B.   Debtors' Motion for an Order Authorizing Continuation of Certain Customer Practices (ECF Doc. No. 7) (the "**Customer Practices Motion**").

The Customer Practices Motion sought authority for the Debtors to continue certain of their prepetition customer practices, including the honoring of customer deposits, returns, and related warranty and service requests.  The Debtors maintained these practices prior to the Petition Date to ensure customer loyalty, and believe that these practices are vital to maintaining customer loyalty. The Court approved the Customer Practices Motion on October 29, 2015 (ECF Doc. No. 18).

**Official Committee of Unsecured Creditors**

To date, no Official Committee of Unsecured Creditors has been appointed in the Debtors' chapter 11 cases.

**Other Key Orders Granted During the Chapter 11 Case**

In addition to the First Day Orders, the Bankruptcy Court has entered the following additional orders:

- By Order dated October 30, 2015 (ECF Doc. No. 20), the Court ordered the procedural and administrative consolidation of the Debtors' chapter 11 cases under Case No. 15-12790 (JLG).
- By Order dated December 18, 2015 (ECF Doc. No. 33), the Court set January 25, 2016 as the last date for creditors to file claims against the Debtors that arose prior to the Petition Date. The last date for governmental entities to file claims is April 12, 2016.

**Potential Claims of the Debtor**

The Debtors and/or Reorganized Debtors will have the opportunity to pursue Avoidance Actions under the Bankruptcy Code if they choose to do so, other than those potential Avoidance Actions against Released Parties released in section 10.03 of the Plan. The Debtors and/or Reorganized Debtors may be entitled to recover certain transfers of property made prior to the Petition Date for the benefit of the Estates. Lawsuits to recover these transfers are defined in this Plan as the "Avoidance Actions." Presently, the Debtors do not intend to pursue recovery of Avoidance Actions because the Debtors believe that (a) the aggregate amount of the recoverable transfers is relatively small, (b) the Debtors do not want to take positions which would be adverse to their ongoing relationships with its vendors and suppliers, and (c) the legal fees and costs associated with pursuing Avoidance Actions would not justify the possible benefits.

**Postpetition Business Operations**

Since the Petition Date, the Debtors have been operating their businesses in accordance with the budgets established by the Debtors, and approved by the DIP Lender in connection with

BPOWERS/1846376.3/065531

the DIP Financing Order.   Through the post-petition restructuring process, the Debtors have maintained their talent and reputation in the market place.   Since the Petition Date, the Debtors have continued to secure additional business and collect receivables.  The Debtors project that their business will continue to improve and that the Debtors will operate profitably in 2016 and beyond.

**The Exit Financing**

On the effective date of the Plan, the Debtor in Possession credit facility will be converted into a new 12% Original Issue Discount Senior Secured Convertible Debenture (the "**Exit Facility**") due two years from the Effective Date of the Plan. The amount of the Exit Facility shall be calculated as follows:

The total principal amount of the DIP credit facility of $600,000 plus interest and unpaid fees and costs under the DIP credit facility on the Effective Date of the plan, plus $500,000 of new capital.

The sum of the foregoing shall be multiplied by 1.25 to obtain the principal amount of the Exit Facility on the date due.

Hillair will be the sole holder under the Exit Facility.

The Exit Facility shall be secured by a first-priority lien and security interest on all of the Debtor's assets, other than the lien granted to IPFS Corporation in connection with its super-priority security interest in certain insurance policies.

All Debtors shall unconditionally guaranty the obligations and indebtedness owed to Hillair under the Exit Facility, and such guaranty agreements shall be secured by a first-priority lien and security interest on all of the guarantor's assets, including, without limitation, a pledge of the guarantor's stock/membership interests to Hillair.

The Form of the Exit Facility will be based on the Debtors' prior convertible debentures that constituted the pre-petition secured debt.

At any time after the original issue date until the Exit Facility is no longer outstanding, it shall be convertible, in whole or in part, into shares of the Debtors' common stock at Hillair's option, at any time and from time to time, upon delivery of a notice to the Debtors.

The Debtors' shall reserve sufficient common stock to permit the conversion.

The conversion of the Exit Facility into common stock will dilute the Debtors' other shareholders.

**Management Stock Option Plan and Management of the Reorganized Debtors**

The proposed management of the Reorganized Debtor, their names, titles and compensation is set forth as follows:

Paul Galvin, CEO
Annual base compensation of $180,000, plus health care
Annual bonus – target is 100% of base salary, based on calculation below
Stock Option grant of 4.5% of outstanding equity at emergence, of which two (2%) percent will vest at emergence from bankruptcy, remaining over 3 year vesting schedule.  The Option strike price will be at price per common share at emergence.

BPOWERS/1846376.3/065531

Steve Armstrong, President
Base compensation of $106,000
Annual bonus – Target is 100% of base salary, based on calculation below
Stock Option grant of 2.0% of outstanding equity at emergence, of which one-half (0.5%) percent will vest at emergence from bankruptcy, remaining over 2 year vesting schedule. Option strike price will be at price per common share at emergence

David Cross, VP Business Development
Base compensation of $106,000
Annual bonus – Target is 100% of base salary, based on calculation below
Stock Option grant of 2.0% of outstanding equity at emergence, of which one-half (0.5%) percent will vest at emergence from bankruptcy, remaining over 3 year vesting schedule
Option strike price will be at price per common share at emergence

Mahesh Shetty, CFO
Base compensation of $10,000 per month, paid as a consultant (no bonus)
Stock Option grant of 1.0% of outstanding equity at emergence of which 0.5% will vest at emergence from bankruptcy, 0.5% at time of filing of 2016 10-K
Option strike price will be at price per common share at emergence

Kevin King, Controller
Base compensation of $60,000
Annual bonus – Target is 50% of base salary, based on calculation below
Stock Option grant of 0.5% of outstanding equity at emergence which will vest at emergence from bankruptcy
Option strike price will be at price per common share at emergence

Conditions to calculate bonus pool for 2016:
Reorganized Debtors must achieve revenue of at least $12 million for fiscal year 2016 (ending December 31, 2016), as expressed in the applicable 10-K filing. Revenue must be recognized in fiscal year 2016, and must be paid by March 31, 2017
20% of EBITDA from Q2-Q4 2016 (after base salaries and all other expenses) will be allocated to a bonus pool to be distributed as follows:
CEO – 42%
President – 25%
VP Business Development – 25%
Controller – 8%

## V.   SUMMARY OF PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND INTERESTS

Below is a summary of the Plan. Parties in interest are urged to review the Plan in its entirety to determine how the Plan affects their rights as Creditors or Interest holders.

The Plan provides for the reorganization of the Debtors by the use of the Exit Facility, which shall provide the necessary Cash to fund the Effective Date Payment. From the Effective Date, Payment, the Debtors will pay the DIP obligations, Administrative Expenses, Priority Claims and the Initial Distribution to unsecured creditors.

The Debtors project that they will have funds that will be sufficient to make the Effective Date Payments required under the Plan. The projections annexed hereto as **Exhibit C** demonstrate that the Debtors' business operations will support the payments required by the Plan.

BPOWERS/1846376.3/065531

The Debtors currently anticipate that the Effective Date will occur no later than thirty days after the confirmation of the Plan.

The Debtors believe that the treatment of Creditors under the Plan provides creditors with substantially greater value compared to what they would receive in liquidation under chapter 7 of the Bankruptcy Code. *See Exhibit B*, Liquidation Analysis.

## Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Bankruptcy Code. They are not considered impaired, and holders of such claims do not vote on the Plan. Holders of these claims may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Bankruptcy Code. As such, the Debtors have *not* placed the following claims in any class:

## Statutory Fees

Statutory fees, and any applicable interest thereon, are all fees payable pursuant to Chapter 123 of Title 28, United States Code, including, but not limited to, all fees required to be paid by 28 U.S.C. §1930(a)(6) plus any interest due and payable under 31 U.S.C. §3717 ("**U.S. Trustee Fees**"). U.S. Trustee Fees will accrue and be timely paid until the Case is closed, dismissed, or converted to another chapter under the Bankruptcy Code. Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid in full on the Effective Date of the Plan.

The following chart lists the Debtors' estimated U.S. Trustee Fees and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|------|------|------|
| U.S. Trustee Fees | $5,525 | Paid in full in Cash on the Effective Date of the Plan. |

## Administrative Expenses

Administrative Expenses are costs or expenses of administering the Debtors' Chapter 11 Case which are allowed under Bankruptcy Code § 503. Administrative Expenses also include the value of any goods sold to the Debtors in the ordinary course of business and received within twenty (20) days prior to the Petition Date. The Bankruptcy Code requires that all Administrative Expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

BPOWERS/1846376.3/065531

The following chart lists the Debtors' estimated administrative expenses and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | $490,000 | To the extent not paid in the ordinary course pursuant to the budget attached to the Cash Collateral Order, they will be paid in full on the Effective Date, in Cash, or upon such other terms as may be agreed upon by the holder of the Claim and the Debtors. |
| Professional Fees, as approved or to be approved by the Bankruptcy Court. SilvermanAcampora LLP Counsel to the Debtor | $100,000.00 (estimated) | Paid in full on the Effective Date, in Cash or according to Bankruptcy Court order if such fees have not been approved by the Bankruptcy Court on the Effective Date of the Plan. |
| Clerk's Office Fees | $0.00 | Paid in full on the Effective Date. |
| Other administrative expenses | $0.00 | Paid in full on the Effective Date, in Cash, or upon such other terms as may be agreed upon by the holder of the Claim and the Debtors. |
| TOTAL | $567,839.83 | |

## Priority Tax Claims

Priority Tax Claims are not impaired.  All Allowed Priority Tax Claims shall be paid on the Effective Date unless such claims are Allowed in an amount significantly greater than estimated or in an amount that would jeopardize a recovery to unsecured creditors, then in that case Priority Tax Claims will be paid over a five (5) year period in accordance with Bankruptcy Code §1129(a), at the prime rate of interest per annum as set forth in the Wall Street Journal, or other comparable publication.  Holders of Priority Tax Claims shall not be entitled to vote on the Plan.

The following chart lists the Debtors' estimated section 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description (name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| Tax Claims (estimated) | $5,724.25 | | All Allowed Priority Tax Claims shall be paid on the Effective Date unless such claims are Allowed in an amount significantly greater than estimated or in an amount that would jeopardize a recovery to unsecured creditors, then in that case Priority Tax Claims will be paid over a five (5) year period in accordance with Bankruptcy Code §1129(a), at the prime rate of interest per annum as set forth in the Wall Street Journal, or other comparable publication. |

BPOWERS/1846376.3/065531

## Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

## Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Bankruptcy Code § 507(a) are required to be placed in classes. The Bankruptcy Code requires that each holder of a priority claim receive Cash on the Effective Date of the Plan equal to the allowed amount of such claim; however, a class of holders of such claims may vote to accept different treatment.

The Debtors propose to pay priority unsecured claims on the Effective Date.

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 1 | Priority Non-Tax Claims $0.00 | Unimpaired | Paid in full on the Effective Date. |

## Classes of Secured Claims

Allowed Secured Claims are claims secured by property of the Debtors' bankruptcy estates (or that are subject to setoff) to the extent allowed as secured claims under Bankruptcy Code § 506. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be treated as a General Unsecured Claim.

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 2 | DIP Lender Secured Claim in the amount of approximately $600,000 | Unimpaired | Paid in full on the Effective Date. |
| 3 | Prepetition Lender Secured Claim ($5,405,010.00) | Impaired | Shall receive one hundred (100%) percent of a newly issued convertible preferred stock on the basis of one share of preferred stock per dollar of Allowed Petition Lender Secured Claim. The preferred stock shall vote with the common stock of the Reorganized Debtor on an as converted basis, shall receive dividends with the common stock, and shall have a $1.00 per share liquidation preference. |

## Classes of General Unsecured Claims

General unsecured claims are not secured by property of the estate and are not entitled to priority under Bankruptcy Codes § 507(a).

The following chart identifies the Plan's proposed treatment of Class 4 Claims, which consist of General Unsecured Claims against the Debtors:

BPOWERS/1846376.3/065531

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 4 | General Unsecured Claims<br><br>$399,218.66 (approx.) – combined scheduled and proof of claim amount. | Impaired | Shall receive a Distribution of one hundred (100%) percent of its Allowed Claim payable as follows: fifty (50%) percent of its Allowed Claim on the Effective Date as part of the Effective Date Payment, twenty five (25%) percent at the conclusion of the next full fiscal quarter of the Reorganized Debtor after the Effective Date, and the remaining twenty five (25%) percent of its Allowed Claim at the conclusion of the second full fiscal quarter of the Reorganized Debtor after the Effective Date. |

## Class 5 Interest Holders

Shares of stock held by each holder of Interests in the Debtors shall be cancelled and replaced by such holder's pro rata share of 100% of the new common stock in the Reorganized Debtors that is outstanding at the Effective Date.  Such common stock ownership in the Reorganized Debtors is subject to dilution by conversion of the preferred stock as described in Section 3.06 of the Plan.  Assuming 100% of such preferred stock is converted and taking into account the Management Options (defined in section 3.06 of the Plan) as if fully exercised, the holders of the Class 5 Interests would hold 7.5% of the common stock of the Reorganized Debtor. The ownership interest of the holders of the Class 5 Interests is subject to further dilution upon the conversion of the Exit Facility into new common stock.  Class 5 Interests are impaired.

## Claims and Interests Not Impaired Under the Plan

The term "impaired" as used below shall have the same meaning as it has pursuant to Bankruptcy Code § 1124. Holders of Administrative Expenses, Priority Tax Claims, Class 1 (Non-Tax Priority Claims), and Class 2 (DIP Lender Secured Claim) are not impaired and shall be paid in full, on the Effective Date.

Classes 1 and 2 are not impaired under the Plan and, therefore, holders of Claims in Classes 1 and 2 are deemed to accept the Plan.

## Claims and Interests Impaired Under the Plan

Claims in Classes 3 and 4 and Interests in Class 5 are impaired under the Plan.  The holders of Claims in Classes 3 and 4 and Interests in Class 5 are entitled to vote on the Plan.

## VI.    MEANS FOR IMPLEMENTATION OF THE PLAN

No later than two (2) Business Days before the Confirmation Hearing, the Debtors shall provide proof that they will have sufficient funds to make the Effective Date Payment required under the Plan. The payments under the Plan will be made from (a) Effective Date Payment, and (b) the Cash derived from the Debtors' operations and/or the Reorganized Debtors' operations.

On the Effective Date, the Debtors will have sufficient Cash to pay in full the following amounts required to be paid under the Plan:

- U.S. Trustee's fees and any applicable interest;

- Allowed Priority Tax Claims and Priority (Non-Tax) Claims;

BPOWERS/1846376.3/065531

- The initial payment (or reserve in the event of Disputed Claims) to Holders of Class 4 Claims which shall be fifty (50%) of the amount owed to Holders of Allowed Class 4 Claims;

- Allowed Administrative Expenses, including Allowed Fee Claims (except to the extent that the holders of Administrative Expenses agree to different treatment, and except for Allowed Administrative Expenses held pursuant to Bankruptcy Code 503(b)(9) which shall be paid as soon as reasonably practicable after the Effective Date or upon such other terms as may be agreed to by the holder thereof and the Debtor).

On the later to occur of (a) the Effective Date, and (b) the date such Claim becomes Allowed by a Final Order of the Bankruptcy Court, or as soon thereafter is reasonably practicable, the Debtors shall use available Cash to pay in full, or establish appropriate reserves for Allowed Administrative Expenses, including Allowed Fee Claims, except as otherwise agreed to by the holder thereof and the Debtors. The Debtors shall pay all Priority Tax Claims, and Priority (Non-Tax) Claims, in accordance with Article III of the Plan.

To the extent necessary to pay Allowed Claims under the Plan, the Reorganized Debtor will pay the remaining fifty (50%) percent of the Allowed Class 4 Claims from their cash flow in accordance with the Plan.

**Quarterly Reports**.  Until the Chapter 11 Cases are closed, the Reorganized Debtors shall file quarterly reports setting forth (a) the status of Distributions to holders of Allowed Class 4 Claims, and (b) the status of any Avoidance Actions.  The quarterly reports shall be filed on or before the 15th day of July, October, January and April. In addition, the Reorganized Debtors shall maintain an accurate register of the General Unsecured Claims.

**Vesting of Assets**. As of the Effective Date, pursuant to provisions of Bankruptcy Code §§ 1141(b) and (c), all property and assets of the Debtors shall be transferred to and shall vest in the Reorganized Debtors free and clear of all Liens, Claims and Interests, except as otherwise expressly provided in this Plan, and the Confirmation Order.

**Continuing Existence**.  From and after the Effective Date, the Reorganized Debtors, other than Endaxi, will continue in existence and shall continue normal operations of their business as corporations under applicable law.

**Post-Consummation Implementation**. On the Effective Date, all relevant parties (including the Debtors, the Reorganized Debtors, the DIP Lender, and the Prepetition Lender) will take all actions necessary to cause title to the Debtors' assets to be transferred to the Reorganized Debtors, and for the termination of any security interests, or Uniform Commercial Code filings, after the conversion of secured claims to equity.  Promptly after full administration of the Debtors' estates, the Debtors shall file the Closing Report in accordance with Local Bankruptcy Rule 3022-1, within the deadlines set forth therein, and an application for a Final Decree.

**Professionals**. The Reorganized Debtors may retain and compensate professionals, including professionals who have been or are currently retained as the Debtors' professionals, without approval from the Bankruptcy Court.

**Release of Avoidance Actions**. On the Effective Date, the Debtors, on behalf of themselves and their Estates shall release any and all Avoidance Actions and the Debtors and the Reorganized Debtors, and any of their successors and assigns and any entity acting on behalf of

the Debtors or the Reorganized Debtors shall be deemed to have waived the right to pursue any and all Avoidance Actions.

## VII.   EXECUTORY CONTRACTS AND LEASES

Any executory contract or unexpired lease of the Debtors which has not been assumed or rejected by Final Order of the Bankruptcy Court, or which is not the subject of a pending motion to assume or reject on the Confirmation Date, shall be deemed assumed by the Debtors on the Effective Date. The Debtors and the Reorganized Debtors retain the right to object to any cure amount in connection with the assumption and assignment of an executory contract or unexpired lease and further reserve the right to treat such claim for a cure amount as a Disputed Claim. To the extent that the D&O Liability Insurance Policies are considered to be Executory Contracts, notwithstanding anything in the Plan to the contrary, effective as of the Effective Date, the Reorganized Debtors shall be deemed to have assumed all unexpired D&O Liability Insurance Policies with respect to the Debtors' directors, managers, officers, and employees serving on or prior to the Petition Date pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' assumption of each of the unexpired D&O Liability Insurance Policies. On the Effective Date, the Debtors shall be deemed to have assumed all of the Debtors insurance policies.

Any entity with a Claim that arises from the rejection of an executory contract or unexpired lease must file its Claim within thirty (30) days after the earlier of the date of the order rejecting the executory contract or unexpired lease and the Confirmation Date, and shall have the same rights as a Class 4 Claimant to the extent such Claim becomes an Allowed General Unsecured Claim. **Any Claims arising from the rejection of an executory contract or unexpired lease not filed with the Bankruptcy Court within such time will be automatically treated as a Disallowed Claim, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Reorganized Debtors, the Estates, or property of the foregoing parties, without the need for any objections by the Debtors or the Reorganized Debtors, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other entity, and any Claim arising out of the rejection of the executory contract or unexpired lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or any proof of Claim to the contrary.**

## VIII.   PROCEDURE FOR RESOLVING DISPUTED CLAIMS

Article VII of the Plan sets forth the procedures for resolving Disputed Claims under the Plan, including the establishment of Disputed Claims Reserves for certain Disputed Claims.

## IX.   RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction over the Debtors, the Reorganized Debtors, and the Chapter 11 Cases pursuant to chapter 11 of the Bankruptcy Code and for the purposes set forth in Bankruptcy Code §1127(b), including, without limitation, with respect to the following matters:

    a.  to enable the Debtors or the Reorganized Debtors, as applicable, to prosecute any Avoidance Actions;

    b.  to hear and determine any claim or cause of action belonging to the Estates, and any disputes concerning the classification, allowance, or estimation of any Claim;

    c.  to resolve any disputes concerning any funds held in the Disputed Claims Reserve;

d. to hear and determine all disputed issues relating to a security or ownership interest in any property of the Estates, or in any proceeds thereof;

e. to hear and determine all Claims arising out of any agreement entered into by the Debtors after the Petition Date but prior to the entry of the Confirmation Order;

f. to recover all assets and property of the Debtors wherever located;

g. to alter, modify and amend the Plan pursuant to Bankruptcy Code §1127 or to remedy any defect, cure any omissions, or reconcile any inconsistency in the Plan or Confirmation Order as may be necessary to carry out the purpose and intent of the Plan, and to extent authorized by the Bankruptcy Code or Bankruptcy Rules;

h. to hear and determine such other matters as may be provided for in the Confirmation Order and for the purposes set forth in Bankruptcy Code §§1127(b) and 1142, or in Bankruptcy Rules 1019 and 3020(d);

i. to hear and determine all applications for compensation of professionals for services rendered and expenses incurred through the Confirmation Date, and thereafter to hear and determine any objections to compensation of professionals;

j. to hear and determine any and all pending applications, adversary proceedings, contested matters and litigated matters;

k. to hear and determine any disputed issues with respect to the payments to be made under the Plan;

l. to enter orders that are necessary or appropriate to carry out the provisions of the Plan, including orders interpreting the provisions of the Plan;

m. to enter a Final Order or decree concluding the Debtors' Chapter 11 Case; and

n. to determine such other matters as may be provided for in the Confirmation Order, or as may be authorized under the provisions of the Bankruptcy Code.

## X.    CONFIRMATION AND EFFECTIVE DATE

**Conditions Precedent to Confirmation**. The following are the conditions precedent to the Confirmation of the Plan:

a. The Debtors shall have entered into the Exit Facility, conditioned on the entry of the Confirmation Order, which shall provide Cash sufficient to make the Effective Date Payment;

b. All terms, conditions and provisions of the Plan are approved in the Confirmation Order;

c. The proposed Confirmation Order shall be in form and substance acceptable to counsel to the Debtors, counsel to DIP Lender, counsel to the Exit Facility lender, and the U.S. Trustee;

d. The Debtors shall have sufficient Cash to pay in full all Allowed Administrative Expenses, including Fee Claims; and

e. The terms of the Confirmation Order authorize the Reorganized Debtors to issue the new common stock and new preferred stock pursuant to the exemption from registration under the Securities Act provided by either section 1145 of the Bankruptcy Code or Section 4(a)(2) of the Securities Act, as amended.

BPOWERS/1846376.3/065531

The conditions precedent set forth in subparagraphs (a)–(e) above, may be waived by the Debtors, only upon reasonable notice to counsel to Prepetition Lender, counsel to the Committee, and the U.S. Trustee.

**Conditions Precedent to the Effective Date**.  The following are the conditions precedent to the Effective Date of the Plan:

      a.  The Bankruptcy Court shall have entered the Confirmation Order, and the Confirmation Order shall have become a Final Order; and

      b.  The Debtors shall have made the Effective Date Payment.

### XI.   DISCHARGE OF CLAIMS, RELEASES AND EXCULPATION

**Interest Holders of the Debtors.**  UPON THE EFFECTIVE DATE, NOTWITHSTANDING BANKRUPTCY CODE §1141(d)(1),  INTERESTS IN THE DEBTORS SHALL REMAIN, AND SUCH HOLDER SHALL MAINTAIN ALL RIGHTS UNDER BANKRUPTCY LAW AND NON-BANKRUPTCY LAW WITH RESPECT TO THOSE INTERESTS, SUBJECT TO THE DILUTION OF SUCH INTERESTS AS SET FORTH IN THE PLAN.

**Injunction.**   EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, FROM AND AFTER THE CONFIRMATION DATE, ALL PERSONS ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR PROCEEDING (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE DEBTORS, THE REORGANIZED DEBTORS, THE DEBTORS' PROPERTY, OR THE ESTATES BASED ON ANY ACT, OMISSION, TRANSACTION, OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED ON OR BEFORE THE CONFIRMATION DATE, INCLUDING ANY CLAIMS THAT ARE PROPERTY OF THE DEBTORS' BANKRUPTCY ESTATES (COLLECTIVELY, THE "RELEASED CLAIMS"); PROVIDED THAT NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL ENJOIN THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE OR LOCAL AUTHORITY, FROM BRINGING ANY CLAIM, SUIT, ACTION OR OTHER PROCEEDINGS (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE DEBTORS, OR ANY OF THE DEBTORS' OFFICERS, DIRECTORS, EMPLOYEES, ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS, OR THE DEBTORS' PROPERTY, FOR ANY LIABILITY, INCLUDING UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES, OR ANY STATE OR LOCAL AUTHORITY. IN ADDITION, THE INJUNCTION PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.

**Release by the Debtors.**  PURSUANT TO BANKRUPTCY CODE §1123(b), AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, UPON THE EFFECTIVE DATE, THE DEBTORS AND REORGANIZED DEBTORS SHALL RELEASE UNCONDITIONALLY, AND HEREBY ARE DEEMED TO FOREVER RELEASE UNCONDITIONALLY THE FOLLOWING PERSONS (COLLECTIVELY, THE "RELEASED PARTIES"): (A) THE DIP LENDER AND PREPETITION LENDER AND THEIR DIRECTORS, OFFICERS, ADVISORS, ACCOUNTANTS, CONSULTANTS, AND ATTORNEYS; AND (B) THE DEBTORS' ADVISORS, INCLUDING ATTORNEYS AND ACCOUNTANTS, FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, RIGHTS, CAUSES OF ACTION AND LIABILITIES WHATSOEVER, INCLUDING THE RELEASED CLAIMS (EXCEPT FOR THE RIGHT TO ENFORCE THE PERFORMANCE OF THEIR RESPECTIVE OBLIGATIONS, IF ANY, UNDER THE PLAN AND THE RIGHT TO FILE AN OBJECTION WITH THE BANKRUPTCY COURT WITH RESPECT TO

BPOWERS/1846376.3/065531

ANY FEE CLAIMS), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN LAW, OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE, EXCEPT FOR THOSE CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION THAT CONSTITUTES GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, *ULTRA VIRES* ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES. IN ADDITION, THE RELEASE PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.

A.   **Exculpation.** TO THE EXTENT PERMISSIBLE UNDER BANKRUPTCY CODE §1125(e), NEITHER THE RELEASED PARTIES NOR THEIR ADVISORS, ACCOUNTANTS, AND ATTORNEYS, SHALL HAVE OR INCUR ANY LIABILITY TO ANY HOLDER OF A CLAIM OR INTEREST FOR ANY ACT OR OMISSION DURING THE PENDENCY OF THE CHAPTER 11 CASES IN CONNECTION WITH, OR ARISING OUT OF, THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, OR THE PROPERTY OR CASH TO BE DISTRIBUTED UNDER THE PLAN; PROVIDED, HOWEVER, THAT THE FOREGOING EXCULPATION SHALL HAVE NO EFFECT ON THE LIABILITY OF AN ENTITY WHICH RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE RESULTED FROM GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, *ULTRA VIRES* ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES, AND, IN ALL RESPECTS, THE RELEASED PARTIES SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN. IN ADDITION, THE EXCULPATION PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.

EXCEPT FOR THE RELEASED CLAIMS, NOTHING CONTAINED HEREIN SHALL CONSTITUTE A RELEASE OF AN INDEPENDENT CLAIM HELD BY A CREDITOR OR INTEREST HOLDER AGAINST A NON-DEBTOR ENTITY OR PERSON BASED ON ACTS OR OMISSIONS UNRELATED TO THE DEBTORS OR THE CHAPTER 11 CASES. IN ADDITION, NOTHING CONTAINED HEREIN OR IN THE PLAN SHALL RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES AND SETTLEMENTS CONTAINED IN THE PLAN.

NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL EFFECT A RELEASE OF ANY CLAIM BY THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY, INCLUDING, WITHOUT LIMITATION, ANY CLAIM ARISING UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY STATE AND LOCAL AUTHORITY AGAINST: (I) THE DEBTORS; (II) ANY OF THE DEBTORS' SHAREHOLDERS, OFFICERS, DIRECTORS, EMPLOYEES, ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS; AND (III) THE RELEASED PARTIES. IN ADDITION, SUBJECT TO BANKRUPTCY CODE §§ 524 AND 1141, THE RELEASES DESCRIBED HEREIN SHALL NOT PRECLUDE POLICE, FEDERAL TAX, OR REGULATORY AGENCIES FROM FULFILLING THEIR STATUTORY DUTIES.

BPOWERS/1846376.3/065531

**THE RELEASES DESCRIBED IN THIS SECTION ARE IN ADDITION TO, AND NOT IN LIEU OF, ANY OTHER RELEASE SEPARATELY GIVEN, CONDITIONALLY OR UNCONDITIONALLY, BY THE DEBTORS TO ANY OTHER PERSON.  ANY RELEASE GIVEN BY THE DEBTORS OR A PERSON WHICH IS PART OF OR SUBJECT TO A FINAL ORDER OF THE BANKRUPTCY COURT REMAINS IN FULL FORCE AND EFFECT AND ARE RATIFIED BY THE PLAN.**

Persons or Entities Not Released by the Debtors.  Except for the releases contained in the Plan, the Confirmation Order and the DIP Financing Order, the Debtors and the Estates are not releasing any claims or actions against any Person, or their respective affiliates, assigns, agents, directors, officers, advisors, accountants, investment bankers, consultants, attorneys and other representatives of any of the foregoing.

Good Faith.  The entry of the Confirmation Order shall constitute the determination by the Bankruptcy Court that the Released Parties have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code, pursuant to, among others, Bankruptcy Code §§1125(e) and 1129(a)(3), with respect to the foregoing.

## XII.    MISCELLANEOUS PROVISIONS

Headings.  The headings used in the Plan are inserted for convenience or reference only and are not part of the Plan.

Notices.  Notices shall be deemed given when received.  All notices, requests or demands described in or required to be made in accordance with the Plan shall be in writing and shall be delivered by overnight mail and email transmission as follows:

(a)    If to the Debtors or Reorganized Debtors:
SilvermanAcampora LLP
100 Jericho Quadrangle - Suite 300
Jericho, New York 11753
Attn: Gerard R. Luckman
(516) 479-6300
GLuckman@SilvermanAcampora.com

(b)    If to the DIP Lender:
McDonald Hopkins LLC
600 Superior Avenue East
Suite 2100
Cleveland, OH 44114
Attn: Scott N. Opincar
(216) 348-5753
SOpincar@McDonaldHopkins.com

(c)    If to the Prepetition Lender:
McDonald Hopkins LLC
600 Superior Avenue East
Suite 2100
Cleveland, OH 44114
Attn: Scott N. Opincar
(216) 348-5753
SOpincar@McDonaldHopkins.com

BPOWERS/1846376.3/065531

(d)    If to the U.S. Trustee:
       Office of the U.S. Trustee
       201 Varick Street, Suite 1006
       New York, New York 10014
       Attn: Andrea B. Schwartz
       (212) 510-0500
       Andrea.B.Schwartz@USDOJ.gov

If to a holder of a Claim or Interest, at the address set forth in its proof of Claim or proof of Interest filed with and allowed by the Court, or, if none, at its address set forth in the Schedules prepared and filed by the Debtors with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

Change of Address.  Any of the parties identified in section 11.02 of the Plan may change the address at which it is to receive notices under the Plan by sending written notice pursuant to the provisions of this Article to counsel to the Debtors.

Modification of the Plan.  The Debtors reserve the right, in accordance with the Bankruptcy Code, upon reasonable notice to and written consent of counsel to DIP Lender and upon reasonable notice to the Prepetition Lender, to amend or modify the Plan prior to the Confirmation Date or as soon as practicable thereafter.  After the Confirmation Date, the Debtors or the Reorganized Debtors may, upon appropriate motion, notice, and order of the Court, remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

Reservation of Rights.  Nothing contained herein shall prohibit the Debtors or the Reorganized Debtors from prosecuting or defending any of the rights of the Debtors' Estates, including without limitation, the guaranty claims against Red Cardinal and the Avoidance Actions.

Severability. Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan.

Successors and Assigns.  The rights and obligations of any entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

Governing Law.  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

Section and Article References.  Unless otherwise specified, all references in the Plan to Sections and Articles are to Sections and Articles of the Plan.

## XIII.   ALTERNATIVES TO THE PLAN

**Liquidation Analysis and Valuation**

The Debtors and their professionals have carefully considered alternatives to the Plan. The alternatives considered were the sale of the Debtors' assets as a "going concern" and the liquidation of the Debtors' assets. After considering these alternatives, including the Liquidation Analysis, the Debtors determined that the Plan provides creditors and Interest Holders with greater recoveries than they would receive in the event of a sale of the Debtors' business or assets, or a liquidation of the Debtors' assets.

BPOWERS/1846376.3/065531

The Debtors believe that the total consideration offered to Creditors under the Plan is more than Creditors would receive in a liquidation under chapter 7 of the Bankruptcy Code. In addition, the Debtors believe that no party would likely offer more for the stock in the Reorganized Debtors.

## Liquidation Under Chapter 7 of the Bankruptcy Code

If the Plan is not confirmed under Bankruptcy Code § 1129(a), the Debtors may convert the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, in which case, a trustee would be elected or appointed to liquidate any remaining assets of the Debtors for distribution to creditors pursuant to chapter 7 of the Bankruptcy Code.  If a trustee is appointed, the Debtors believe that all Creditors holding Allowed General Unsecured Claims will receive less than would under the Plan.  In the event of liquidation under chapter 7 of the Bankruptcy Code, the Debtors believe that all of the Cash proceeds of such liquidation primarily would be paid to holders of Secured Claims, and only certain of the Administrative Expense Claims that were subject of a carve-out of the DIP Lender's liens.

The Debtors encourage all creditors to carefully review the Liquidation Analysis annexed hereto as Exhibit B to fully understand how General Unsecured Creditors will be treated if the Debtors' assets were liquidated.

## Certain Risk Factors

Under the Plan, Class 4 Creditors will be paid fifty (50%) percent of their Allowed Claims on the Effective Date, and twenty five (25%) percent at the end of each of the two fiscal quarters after the Effective Date, from the cash flow generated from the Debtors' operations.  Although the Debtors have developed financial projections which indicate that the Debtors will have the ability to make the payments required under the Plan, the Debtors' financial performance may not meet those projections due to many factors, some of which are outside of the Debtors' control.  As a part of each Creditor's analysis of the Plan, they should consider the risk that the Debtors may not meet their financial projections.  Creditors are encouraged to review the Debtors' projections attached to the Statement as Exhibit C.

In the event that the Plan is not confirmed or the Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, the Debtors believe that such action or inaction, as these cases may be, will cause General Unsecured Creditors to receive less than they would ultimately receive under the Plan. The Debtors believe that conversion of these cases to chapter 7 will cause the Debtors' Estates to incur substantial expenses which will negatively affect potential recoveries for General Unsecured Creditors.

## XIV.    CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

THE DEBTORS AND THEIR PROFESSIONALS ARE NOT MAKING ANY REPRESENTATIONS REGARDING THE PARTICULAR TAX CONSEQUENCES OF CONFIRMATION AND CONSUMMATION OF THE PLAN, WITH RESPECT TO THE DEBTORS, HOLDERS OF CLAIMS, OR HOLDERS OF INTERESTS, NOR ARE THEY RENDERING ANY FORM OF LEGAL OPINION OR TAX ADVICE ON SUCH TAX CONSEQUENCES. THE TAX LAWS APPLICABLE TO CORPORATIONS OR LIMITED LIABILITY COMPANIES IN BANKRUPTCY ARE EXTREMELY COMPLEX, AND HOLDERS OF CLAIMS AND HOLDERS OF INTERESTS ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS REGARDING TAX CONSEQUENCES OF THE PLAN, INCLUDING FEDERAL, FOREIGN, STATE AND LOCAL TAX CONSEQUENCES.

## XV.   VOTING PROCEDURES AND REQUIREMENTS

**Ballots and Voting Deadline**

IT IS IMPORTANT THAT THE HOLDERS OF CLAIMS AND INTERESTS IN CLASSES 3, 4 AND 5 TIMELY EXERCISE THEIR RIGHT TO VOTE TO ACCEPT OR REJECT THE PLAN. Holders of Claims and Interests in Classes 3, 4 and 5 have been sent a Ballot together with this Statement.  Such holders should read the Ballot carefully and follow the instructions contained therein.  Please use only the Ballot that accompanies this Statement.

SilvermanAcampora shall serve as voting agent (the "**Voting Agent**") to assist in the transmission of voting materials and in the tabulation of votes with respect to the Plan.  FOR YOUR VOTE TO BE COUNTED, YOUR VOTE MUST BE RECEIVED BY THE VOTING AGENT AT THE ADDRESS SET FORTH BELOW BEFORE THE VOTING DEADLINE OF **4:00 P.M.** ON _____, **2016**.

IF A BALLOT IS DAMAGED OR LOST, YOU MAY CONTACT THE VOTING AGENT AT THE ADDRESS SET FORTH BELOW.  ANY BALLOT THAT IS EXECUTED AND RETURNED BUT WHICH DOES NOT INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT BE COUNTED.

IF YOU HAVE ANY QUESTIONS CONCERNING VOTING PROCEDURES, YOU MAY CONTACT THE VOTING AGENT AT:

SilvermanAcampora LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Attn: Brian Powers

Additional copies of this Statement are available upon request made to the Voting Agent.

**Holders of Claims Entitled to Vote**

Classes 3, 4 and 5 are the only classes of Claims and Interests under the Plan that are impaired and entitled to vote to accept or reject the Plan.  All holders of Classes 3, 4 Claims and Class 5 and Interests should complete the enclosed Ballot and return it to the Voting Agent so that it is received by the Voting Agent before the Voting Deadline.

**Withdrawal of Ballots**

Any voter that has delivered a valid Ballot may withdraw its vote by delivering a written notice of withdrawal to the Voting Agent before the Voting Deadline.  To be valid, the notice of withdrawal must (i) be signed by the party who signed the Ballot to be revoked, and (ii) be received by the Voting Agent before the Voting Deadline.  The Debtors may contest the validity of any withdrawals.

Any holder that has delivered a valid Ballot may change its vote by delivering to the Voting Agent a properly completed subsequent Ballot so as to be received before the Voting Deadline.  In

BPOWERS/1846376.3/065531

the case where more than one timely, properly completed Ballot is received, only the Ballot that bears the latest date will be counted.

**Presumed Rejections of Plan and Cram-Down**

For purposes of voting on the Plan, if any Class of Creditors votes to reject the Plan, then the Debtors will utilize the provisions of Bankruptcy Code § 1129(b) to satisfy the requirements for confirmation of the Plan over the presumed rejections of such Class.

## XVI.    CONFIRMATION OF THE PLAN

The Bankruptcy Court will confirm the Plan only if all of the requirements of Bankruptcy Code § 1129 are met.

**Acceptance of the Plan**

Under the Bankruptcy Code, acceptance of a plan by a class of claims occurs when holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the allowed claims of that class that cast ballots for acceptance or rejection of the plan vote to accept the plan. Thus, acceptance of the Plan by a particular class will occur only if at least two-thirds in dollar amount and a majority in number of the holders of the claims in that class cast their Ballots in favor of acceptance.  A vote may be disregarded if the Court determines, after notice and a hearing, that such acceptance or rejection was not solicited or produced in good faith or in accordance with the provisions of the Bankruptcy Code.

**Best Interests Test and Liquidation Analysis**

The Bankruptcy Code provides that the Plan will not be confirmed, regardless of whether or not anyone objects to confirmation, unless the Bankruptcy Court finds that the Plan is in the "best interests" of all Classes of Claims which are impaired. The "best interests" test will be satisfied by a finding of the Bankruptcy Court that either (i) all holders of impaired Claims have accepted the Plan, or (ii) the Plan will provide such a holder that has not accepted the Plan with a recovery at least equal in value to the recovery such holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

The starting point in determining whether the Plan meets the "best interests" test is a determination of the amount of proceeds that would be generated from the liquidation of the Debtors' assets in the context of a chapter 7 liquidation. Such value must then be reduced by the costs of such liquidation, including costs incurred during the Chapter 11 Cases and allowed under chapter 7 of the Bankruptcy Code (such as professionals' fees and expenses), a trustee's fees, and the fees and expenses of professionals retained by a trustee. The potential chapter 7 liquidation distribution in respect of each Class must be further reduced by costs imposed by the delay caused by conversion to chapter 7.

The attached Liquidation Analysis demonstrates that General Unsecured Creditors would receive less in a chapter 7 liquidation compared to the Distributions contemplated by the Plan.

For the reasons set forth above, the Debtors urge all Creditors to vote in favor of the Plan because each impaired Class will receive under the Plan a recovery at least equal in value to the recovery such Class would receive pursuant to a liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

BPOWERS/1846376.3/065531

## Feasibility of the Plan

Bankruptcy Code § 1129(a)(11) provides that a chapter 11 plan may be confirmed only if the Bankruptcy Court finds that such plan is feasible. A feasible plan is one which will not lead to a need for further reorganization or liquidation of the Debtors. The Debtors anticipate that they will have sufficient Cash on hand on the Effective Date, through the Exit Facility, to fund the Effective Date Payment and make all payments required to be made on the Effective Date under the Plan.

In addition, the Plan requires the Debtors to make certain payments to Class 4 creditors for two successive quarters following the Effective Date. The projections attached hereto as **Exhibit C** indicate that the Debtors can successfully make the payments required under the Plan.

For these reasons, the Debtors believe that the Bankruptcy Court will find that the Plan is feasible. In addition, the Debtors will have sufficient funds to meet all post-Confirmation Date obligations to pay for the costs of administering and fully consummating the Plan and closing the Chapter 11 Case. The Debtors believe that the Plan satisfies the financial feasibility requirement imposed by the Bankruptcy Code because the Debtors will have the Cash necessary to make all the payments required under the Plan.

## Classification of Claims Under the Plan

The Debtors believe that the Plan meets the classification requirements of the Bankruptcy Code which requires that a plan of reorganization place each claim into a class with other claims that are "substantially similar." The Plan establishes classes of Claims as required by the Bankruptcy Code and summarized above. Administrative Expense Claims and Priority Tax Claims are not classified.

## Confirmation of the Plan If a Class Does Not Accept the Plan

The Bankruptcy Code contains provisions for confirmation of a plan even if it is not accepted by all impaired classes, as long as it is accepted by at least one impaired class of claims. **Acceptance of the Plan by an insider (as that term is defined in the Bankruptcy Code) holding a claim against the Debtors is not counted in determining whether an impaired accepting class exists.** The Plan may be confirmed under the so-called "cram-down" provisions set forth in Bankruptcy Code § 1129(b) if, in addition to satisfying the other requirements for confirmation, the Plan is determined to be "fair and equitable" and "does not discriminate unfairly" with respect to each class of Claims that has not accepted the Plan. If the holders of Claims in Class 4 or Interests in Class 5 vote to reject the Plan, then the Bankruptcy Court may only confirm the Plan if the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such Class.

Under the Bankruptcy Code, "fair and equitable" has different meanings for secured and unsecured claims. With respect to a secured claim, "fair and equitable" means (i) the impaired secured creditor retains its liens to the extent of its allowed claim and receives deferred cash payments at least equal in value to the allowed amount of its claim with a present value as of the effective date of the plan at least equal in value to such creditor's interest in the Debtors' interest in the property securing its claim, (ii) if property subject to the lien of the impaired secured creditor is sold free and clear of that lien, the lien attaches to the proceeds of the sale, and such lien proceeds are treated in accordance with clause (i) or (iii) of this paragraph, or (iii) the impaired secured creditor realizes the "indubitable equivalent" of its claim under the plan.

BPOWERS/1846376.3/065531

With respect to an unsecured claim, the "fair and equitable" standard, also known as the "absolute priority rule," requires that a dissenting class receive full compensation for its Allowed Claim before any junior class receives or retains any property under the Plan.  If the holders of claims in any impaired class vote to reject the Plan, the Plan may be confirmed under Bankruptcy Code § 1129(b) if all holders of Claims junior to those of the impaired class do not receive or retain any property under the Plan.

Under the Plan, although the Persons holding the ownership interests in the Debtors immediately prior to the Effective Date will continue to hold ownership Interests, in smaller percentages, in the Reorganized Debtors after the Effective Date, the Debtors believe that the absolute priority rule is being followed because Class 4 creditors are being paid in full.

AS PRESENTED, THE ONLY CLAIMS CLASSES THAT ARE IMPAIRED ARE CLASS 4 (GENERAL UNSECURED CLAIMS) AND CLASS 5 (INTERESTS).

**Confirmation Hearing**

Bankruptcy Code § 1128 requires the Bankruptcy Court, after notice, to hold the Confirmation Hearing to consider confirmation of the Plan.  Bankruptcy Code § 1128(b) provides that any party in interest may object to confirmation of a plan.

By order of the Bankruptcy Court dated March __, 2016, the Confirmation Hearing has been scheduled for _____**, 2016** at **10:00 a.m.** before the Honorable James L. Garrity, Jr., United States Bankruptcy Judge, at the United States Bankruptcy Court, Southern District of New York, Alexander Hamilton U.S. Custom House, Courtroom 601, One Bowling Green, New York, New York. The Confirmation Hearing may be adjourned by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing, or any adjourned hearing.  Any objection to confirmation of the Plan must (a) be in writing, (b) state the name and address of the objecting party and the amount and nature of the claim or interest of such party, (c) state with particularity the basis and nature of any objection or proposed modification, and (d) be filed with the Clerk of the Bankruptcy Court, with a copy delivered to Chambers, and served so that they are received on or before ____ __**, 2016** at **4:00 p.m.**, upon (i) SilvermanAcampora LLP, 100 Jericho Quadrangle, Suite 300, Jericho, New York, 11753, Attn: Gerard R. Luckman (attorneys for the Debtors); (ii) the Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street, New York, New York 10014, Attn: Andrea B. Schwartz; and (iii) McDonald Hopkins LLC, 600 Superior Avenue East, Suite 2100, Cleveland, Ohio 44114, Attn: Scott N. Opincar (attorneys for the DIP Lender and the Prepetition Lender).

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.  Unless an objection to confirmation is timely served and filed, it will not be considered by the Bankruptcy Court.

At the Confirmation Hearing, the Bankruptcy Court must determine whether the requirements of Bankruptcy Code § 1129 have been satisfied and, upon demonstration of such compliance, the Bankruptcy Court will enter the Confirmation Order.

## XVII.   CONCLUSION

This Statement was approved by the Bankruptcy Court pursuant to Bankruptcy Code § 1125. The Bankruptcy Court has determined that the Statement contains "adequate information" as that term is defined in Bankruptcy Code § 1125(a).

BPOWERS/1846376.3/065531

The Debtors believe that confirmation of the Plan is preferable to the alternatives described above because it provides the best opportunity for Distributions to General Unsecured Creditors.

**[ONE SIGNATURE PAGE TO FOLLOW]**

Dated: New York, New York
February 29, 2016

**SG BLOCKS, INC.**

By: _s/ Paul Galvin_____
Name:  Paul Galvin
Title:     Chief Executive Officer

Dated: New York, New York
February 29, 2016

**SG BUILDING BLOCKS, INC.**

By: _s/ Paul Galvin_____
Name:  Paul Galvin
Title:     Chief Executive Officer

Dated: New York, New York
February 29, 2016

**ENDAXI INFRASTRUCTURE GROUP, INC.**

By: _s/ Paul Galvin_____
Name:  Paul Galvin
Title:     Chief Executive Officer

**SILVERMANACAMPORA LLP**
Attorneys for the Debtors.
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Gerard R. Luckman
Brian Powers

BPOWERS/1846376.3/065531